Sylvester DAVIS, Appellant,

v.

Johnny KLEVENHAGEN and Kevin W. Ellis, Appellees.

No. 14–96–01331–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 4, 1998.

Greg Gladden, Houston, for appellants.

Barbara Ann Callistien, Lisa S. Rice, Houston, for appellees.

Before YATES, EDELMAN and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

In this appeal we must decide whether the affirmative defense of official immunity may be raised in a false imprisonment action where an officer executes an arrest warrant on the wrong person. If it may, we must determine whether execution of the arrest warrant involved a discretionary act that would invoke the protection of official immunity. If so, the trial court did not err, as appellant claims, in admitting evidence relevant to appellees' good faith, and any alleged error in submission of the false imprisonment question to the jury was rendered immaterial by their affirmative answer to the immunity question. We find that appellees were entitled to raise the affirmative defense of official immunity, and affirm the judgment of the trial court.

## Background

Appellant, Sylvester Davis, went to the Harris County Sheriff's Department to bond his brother and some friends out of jail. He filled out the paperwork and presented it, along with his Texas driver's license, to a clerk for processing. While processing the paperwork through the department's computer, the clerk discovered Davis had an open warrant for his arrest. After confirming with the warrants division that the arrest warrant was still valid, the clerk requested

the assistance of appellee, Deputy Kevin W. Ellis, a uniformed deputy who worked in the bonding department. Ellis notified Davis there was an open warrant for his arrest, and Davis responded that he was not the person named in the warrant. This not being an unusual response, Ellis began his own investigation.

Ellis checked the information on Davis' driver's license against the "identifiers" that appeared in the computer's Justice Information Management System ("JIMS"). These identifiers included name, address, date of birth, sex, race, height, weight, hair color, cases filed against the named person, and a "systems person number" or "SPN".[1] After a twenty-five to thirty minute investigation, Ellis determined that the JIMS identifiers matched the information on Davis' driver's license. Ellis did not, however, examine the actual paper warrant or the identifiers contained in the warrant, which differed from those found in the JIMS system.[2] Upon confirming with the warrants division that the open arrest warrant was still valid, Ellis arrested Davis. Davis was released on bond the next day, and the charges against him were ultimately dismissed when a handwriting sample showed that he had been mistakenly identified.

Davis filed suit against Ellis and Sheriff Johnny Klevenhagen alleging false imprisonment. At trial, it was uncontested that Davis was not the person named in the arrest warrant. Over Davis' objection, the trial court allowed the defense to put on evidence that Ellis had acted in good faith and that his actions were reasonable. The jury found that (1) Davis was not falsely imprisoned (Question No. 1), (2) Ellis acted in good faith (Question No. 2), and (3) Klevenhagen did not breach his official duties (Question No. 3). The trial court entered judgment on the verdict, and this appeal followed.

## Discussion

■ In his first point of error, Davis contends the trial court erred in admitting evi-

---

1. A "systems person number" is assigned by the computer to an individual when a charge is filed. Davis had received a SPN in connection with two prior offenses. This SPN was apparently placed on the arrest warrant in error.

2. The actual warrant contained a different driver's license number, date of birth, and address than that shown on Davis' driver's license. However, the SPN on the actual warrant was the same SPN given to Davis for two prior offenses.

dence that Ellis acted in good faith because, under Texas common law, good faith is not a defense to a false imprisonment claim where an officer executes an arrest warrant on the wrong person.[3] Davis relies upon a line of Texas cases, most over a century old, beginning with *Hays v. Creary*, 60 Tex. 445 (Tex. 1883). In *Hays*, the plaintiff brought suit for false imprisonment after he was arrested under a capias commanding the arrest of Scott Myans. Although not asserted as a defense, the officers appeared to justify the arrest on the ground they had made an honest mistake. The Texas Supreme Court held that, while evidence of mistake is admissible in mitigation of damages and as disproving malice, it is not ordinarily a defense that will defeat the action. *Id.* at 446.

The court elaborated on its reasoning a few years later in *Formwalt v. Hylton*, 66 Tex. 288, 1 S.W. 376 (1886). In *Formwalt*, the plaintiff was arrested without a warrant, having allegedly been mistaken for his son. Finding that the mistake did not justify the arrest, the court made analogy to a trespass action. Where the correct person is arrested, the court reasoned, "the arrest is not a trespass, no matter how malicious and groundless the prosecution in its beginning." *Id.* at 377. On the other hand, where the wrong person is mistakenly arrested, "there is a trespass, no matter how innocently the parties acted in arresting the wrong person." *Id.* Thus, the officer's honest mistake in making the arrest did not mean that a false imprisonment had not occurred. *Id.; see also Landrum v. Wells*, 7 Tex.Civ.App. 625, 26 S.W. 1001 (1894); *Wolf v. Perryman*, 82 Tex. 112, 17 S.W. 772 (1891); *Clark v. Winn*, 19 Tex.Civ.App. 223, 46 S.W. 915 (1898, writ ref'd). Based on this line of cases, false imprisonment involving arrest of the wrong person has sometimes been characterized as a "strict liability" tort in Texas. Even so, it does not follow that the affirmative defense of official immunity is thereby precluded. The immunity defense was neither raised nor discussed in any of the Texas cases cited by Davis.

Until recently, the concept of official immunity, which includes a "good faith" element, was "an unsettled ... issue in our jurisprudence." *Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex.1992) (Cornyn, J., concurring). The concept was unsettled largely because, historically, as exemplified by the line of Texas cases cited by Davis, "only a few cases discuss good faith in the context of a claim of official immunity to a common law cause of action." *Id.* In *City of Lancaster v. Chambers*, the Texas Supreme Court confirmed that governmental employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. 883 S.W.2d 650, 653 (Tex. 1994). The court neither recognized nor indicated that there might be exceptions to application of the defense when an official has met these requirements. *Id.* To the contrary, the court specifically noted that, in order to abolish official immunity altogether in a particular context, such intent must be clearly expressed. *Id.* at 656 n. 5.

In *Chambers*, the plaintiff, who was injured in a high-speed police chase, claimed that article 6701d of the civil statutes controlled the liability issue and precluded the availability of official immunity. *Id.* (citing TEX.REV.CIV. STAT. ANN. art. 6701d (Vernon 1977)). Article 6701d defines the test for determining whether an emergency vehicle operator is guilty of ordinary or gross negligence, and states that such provision "shall [not] protect the driver from the consequences of his reckless disregard for the safety of others." *Id.* The court found that, although the statute defines the test for determining an operator's ordinary or gross negligence, "it does not determine *whether* immunity should be extended." *Id.* (emphasis in original). The court reasoned as follows:

That art. 6701d may be read to inferentially rebut the defense of official immunity for operators of emergency vehicles in

---

**3.** In a supplemental brief, Davis agrees to abide by the jury's finding that Klevenhagen established reasonable policies and procedures in connection with the execution of arrest warrants, and concedes his points of error as to Klevenhagen on appeal. Thus, we will address the good faith and reasonableness question only as it concerns the actions of Ellis.

some instances, by collapsing the duty and good faith inquiries, is a consequence of the legislature's framing of the statutory duty. But in the absence of an expression of clear legislative intent to abolish official immunity altogether in this context, we hold that a violation of art. 6701d does not preclude application of the official immunity doctrine to negligent emergency vehicle operators.

*Id.* Thus, the Texas Supreme Court found that the defense of official immunity is available to a governmental employee absent a clearly expressed intent that it not apply in a particular context. *Id.* Because the Texas authorities cited by Davis do not address good faith in the context of a claim of official immunity or even mention the affirmative defense, we cannot say they preclude application of the defense to a false imprisonment action based upon an arrest of the wrong person under a facially valid warrant. *See id.*[4]

This conclusion comports with application of the official immunity defense under federal law.[5] In *Monroe v. Pape,* the United States Supreme Court held that a false imprisonment action brought under 42 U.S.C. § 1983 for the deprivation of civil rights "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Department of Soc. Servs.,* 436 U.S. 658, 689, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Part of the background of tort liability, in the case of

police officers making an arrest, is the defense of good faith and probable cause." *Pierson v. Ray,* 386 U.S. 547, 556–57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). As noted in *Pierson,* "[a] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Id.* at 555. Police officers are afforded broad protection because "an arrest is often a stressful and unstable situation calling for discretion, speed, and on the spot evaluation.... As a result, constabulary latitudinarianism is important, and peace officers are and must be endowed with privileges not accorded to ordinary citizens." *Whirl v. Kern,* 407 F.2d 781, 790–91 (5th Cir.1969), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969) (citation omitted). A policeman has a duty to the public to prevent crime and arrest criminals, and "the performance of these duties would be seriously impaired unless peace officers were given considerable discretion in their performance and protected from liability for the consequences of honest and reasonable mistakes." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 121 cmts. (b) and (c) at 206). These same concerns were recognized in Justice Cornyn's concurring opinion in *Travis v. City of Mesquite:*

> [I]t seems obvious that police officers performing discretionary duties in good faith and acting within the course and scope of their employment should be entitled to official immunity. Nowhere else in public service is official immunity more appropriate or necessary than in police work. In

---

4. *See also Lang v. City of Nacogdoches,* 942 S.W.2d 752, 763 (Tex.App.—Tyler 1997, writ denied) (finding police officers were entitled to official immunity as an affirmative defense against claims of false arrest and false imprisonment); *Emerson v. Borland,* 927 S.W.2d 709, 720–21 (Tex.App.—Austin 1996, writ denied) (finding official in state fire marshal's office was entitled to official immunity as an affirmative defense against a claim of false imprisonment); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 120 (Tex.App.—Houston [1st Dist.] 1995, no writ) (finding police chief was entitled to official immunity as an affirmative defense against claims for false arrest, false imprisonment, malicious prosecution, and defamation). *See generally* CHARLES J. NAGY, JR., FALSE IMPRISONMENT AND MALICIOUS PROSECUTION, 38 TEX. JUR. § 19 (3d ed.1998) (citing Texas courts of appeals cases from 1993

to 1996 for the proposition that "[g]overnmental employees are entitled to official immunity from suit arising from performance of their discretionary duties.").

5. Federal immunity law, although not determinative, is instructive in defining the parameters of official immunity under state law. *See Chambers,* 883 S.W.2d at 655 (stating "an examination of federal immunity law is instructive"); *Travis,* 830 S.W.2d at 103 (finding cases addressing good faith in the context of qualified immunity to 42 U.S.C. § 1983 claims instructive; *see also Cantu v. Rocha,* 77 F.3d 795, 808 (5th Cir.1996) (finding "Texas' law of qualified or official immunity is substantially the same as federal immunity law.").

their routine work, police officers must be free to make split-second judgments in good faith based on their experience and training, without fear of personal liability. To hold otherwise 'would likely cause other peace officers under similar circumstances to flinch from acting because of fear of liability.' *Carpenter v. Barner,* 797 S.W.2d 99, 102 (Tex.App.—Waco 1990, writ denied) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)). 'Creating that potential does not serve the public's interest.' *Id.* Were there no immunity from personal liability under such circumstances, 'the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties.' (*Baker v. Story,* 621 S.W.2d 639, 643–44 (Tex. App.—San Antonio 1981, writ ref'd n.r.e.). 830 S.W.2d at 102–03.

Davis cites *Douthit v. Jones,* 619 F.2d 527, 537 (5th Cir.1980) and *Whirl v. Kern,* 407 F.2d 781, 794 (5th Cir.1969) to support his argument that, in Texas, official immunity may not be raised as a defense to a false imprisonment action based upon a mistaken arrest. However, we believe the principle of law cited in these cases does not apply to the issue before us. In *Douthit* and *Whirl,* the plaintiffs were held in the county jail beyond their sentences without authority of law, and brought false imprisonment claims against the sheriff as keeper of the county jail under article 5116 of the civil statutes. *See* TEX. REV.CIV. STAT. art. 5116 (Vernon 1987) (now TEX. LOC. GOV'T.CODE ANN. § 351.041 (Vernon 1995)). Article 5116 imposes a nondelegable duty upon a sheriff to incarcerate only those persons whom he has lawful authority to imprison.[6] In *Whirl,* the plaintiff was detained in jail almost nine months after the dismissal of indictments against him. Although the sheriff claimed he had no personal knowledge that Whirl was being held unlawfully, the evidence was undisputed that the sheriff could have found out about dismissal of the charges had he inquired. *Whirl,* 407 F.2d at 794. The court found that the sheriff, as keeper of the county jail, is charged with a statutory duty to make investigation and know the authority upon which his prisoner is held. *Id.* (citing *McBeath v. Campbell,* 12 S.W.2d 118, 120 (Tex.Com.App. 1929)). Charging the sheriff with constructive notice of the judicial termination of all charges against one in his care and custody, the court concluded the sheriff's ignorance of Whirl's presence in the county jail was no defense:

> As we understand the Texas law of false imprisonment, *read in conjunction with the statutory duties of the sheriff as keeper of the county jail,* non-negligence is no modifier of liability. Sheriff Kern had an unyielding duty to know his prisoner's sentence time, and this duty was not discharged.

*Id.* at 795 (emphasis added).[7] Likewise, *Douthit* involved a claim of false imprisonment against a sheriff as jailer based upon the incarceration of the plaintiff for thirty days beyond his sentence without a valid commitment order. *Douthit,* 619 F.2d at 532. The court found "the discretion that a jailer may lawfully exercise in imprisoning an individual is more limited in scope than even the discretion that a policeman may exercise in effectuating an arrest," and concluded that, regardless of his claim that the prison-

---

**6.** A sheriff may satisfy this duty by adopting reasonable internal procedures to ensure that only those persons are incarcerated for whom the sheriff, or the deputy to whom he delegates such responsibilities, "has a good faith belief based upon objective circumstances that he possesses valid legal authority to imprison." *Douthit v. Jones,* 641 F.2d 345, 346–47 (5th Cir.1981) (on petition for rehearing). In the present case, the jury found that Sheriff Klevenhagen met this standard.

**7.** Later, in *Bryan v. Jones,* the Fifth Circuit rejected the unqualified holding in *Whirl* that a jailer

could not assert a good faith defense in a false imprisonment action, and concluded that the standard of reasonableness by which to measure the availability of the official immunity defense would be determined by gauging the degree of discretion the sheriff exercised. 530 F.2d 1210, 1215 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976). If the error resulting in the unlawful incarceration is outside the realm of the jailer's responsibility, he will not be found liable because he has acted reasonably and in good faith. *See id.*

er's unlawful confinement was unintended, the sheriff, acting as jailer, failed to show that he acted under lawful authority. *Id.* at 535–37.

As demonstrated in *Douthit,* the federal authorities draw a critical distinction between availability of the official immunity defense and the degree of discretion exercised. *See id.* at 535; *Whirl,* 407 F.2d at 790–91. In *Whirl,* the court recognized that false imprisonment based upon an arrest, and false imprisonment based upon unlawful incarceration, are in substance "quite different," and emphasized "we must not allow a superficial similarity between essentially different causes of action to dictate the purpose which the good faith defense is meant to serve...." *Whirl,* 407 F.2d at 790. A peace officer's discretion when making an arrest is necessarily broad because an arrest is often a stressful and unstable situation calling for prompt evaluation, and the performance of these duties would be seriously impaired if peace officers were not given considerable discretion in their performance and protected from liability for honest and reasonable mistakes. *See id.* at 791. Thus, the breadth of a peace officer's discretion in an arrest situation is not necessarily the test of the breadth of a jailer's privilege in the context of a false imprisonment. *See id.* It is said that a jailer, unlike a policeman, "acts at his leisure" in that he is not subject to the stresses and split second decisions of an arresting officer, and his actions are more ministerial in nature. *See id.* at 793. In *Whirl,* the court found "[t]here is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence," while "[t]here can be no quarrel with the fact that 'good faith' in the circumstances of an arrest is a necessary and historically validated defense." *Id.* at 790–91. In sum, *Douthit* and *Whirl* concern the immunity available to a jailer in keeping a prisoner, which differs from the immunity

afforded an arresting officer, and they are distinguishable from the case before us on this basis.[8]

We find no controlling authority evidencing a clear intention to abolish the defense of official immunity in the context of a false imprisonment action based upon arrest of the wrong person under a facially valid warrant. *See Chambers,* 883 S.W.2d at 656. Absent such an intent, the official immunity defense was available to Deputy Ellis and the trial court did not err in admitting evidence relevant to his good faith. *See id.*

■ Davis next claims good faith has no application to Ellis because his actions in executing the arrest warrant were ministerial and do not entitle him to assert the official immunity defense.[9] As a general rule, official immunity protects only those actions of a governmental employee which require the exercise of personal judgment and discretion. *See Travis,* 830 S.W.2d at 102 (citing *Baker,* 621 S.W.2d at 644). On the other hand, an employee's performance of duties that are merely ministerial in nature is not cloaked with official immunity. *See id.* The Texas Supreme Court has defined the distinction as follows.

> Ministerial acts are those: '[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but, where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial....
>
> *If an action involves personal deliberation, decision and judgment, it is discretionary;* actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.

*Chambers,* 883 S.W.2d at 654 (emphasis added) (citations omitted); *see also Kassen v.*

---

8. The court in *Clark v. Heard,* also cited by Davis, fails to recognize this important distinction; therefore, we find it neither controlling nor persuasive. 538 F.Supp. 800, 806 (S.D.Tex.1982). Davis' reliance on *Brown v. Byer* is similarly misplaced. 870 F.2d 975 (5 th Cir.1989). Nevertheless, we note that the court in *Brown* found the arresting officer was not entitled to immunity

under state law because *the jury found* that he was not acting in good faith. *See id.* at 981.

9. Davis does not dispute that Ellis was acting in the course and scope of his employment. In addition, although he disputes the relevance of the good faith element, Davis does not appear to dispute the jury's finding of good faith.

*Hatley,* 887 S.W.2d 4, 9 (Tex.1994); *Woods v. Moody,* 933 S.W.2d 306, 307 (Tex.App.—Houston [14th Dist.] 1996, no writ). The distinction between these two categories is often one of degree, since any official act that is ministerial will still require the actor to use some discretion in its performance. *See Chapman v. Gonzales,* 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied). An officer who " 'is required to pass on facts and determine his actions by the facts found' is performing duties that are 'quasi-judicial' in nature and are discretionary." *Id.* (quoting *Torres v. Owens,* 380 S.W.2d 30, 33–34 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e)); *see also Augustine v. Nusom,* 671 S.W.2d 112, 115 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding that state employees who gather facts and act perform discretionary duties).

Davis claims the distinction in the present case turns on who makes the initial decision to arrest. In a warrantless arrest situation, he claims, the police officer is performing a discretionary function in deciding whether there is sufficient probable cause to make the arrest. On the other hand, where the decision to arrest a named person with particular identifiers has been made by someone else, and that decision results in issuance of a warrant commanding a police officer to arrest that person, the officer is performing a ministerial act when executing the warrant. In other words, Davis claims that, once an arrest warrant is issued, an officer has no discretion regarding whether or not to execute on the warrant. We believe this argument ignores a critical step in the execution of a warrant.

Before making an arrest, an officer must first decide whether the presenting person is the same one named in the warrant. This determination requires a certain amount of investigation and deliberation by the arresting officer. In the present case, Ellis had to investigate whether the Sylvester Davis before him was the same person named in the arrest warrant. Ellis testified it is not un-

common for someone to deny that they are the individual named in a warrant, and there is a system in place to aid an officer in making this determination. When the clerk in the bonding department presented Ellis with Davis' driver's license, he "ran it up" on the JIMS system and confirmed that there was an open warrant for a Sylvester Davis with the same driver's license number and date of birth. Ellis then examined another screen with additional descriptors and found that the name, race, sex and date of birth matched those reflected on Davis' driver's license. He next brought up a "booking inquiry screen" containing more information, including name, date of birth, sex, race, height, weight, hair color, skin color, address, cases that had been filed against the person, and SPN. He determined that the name, date of birth and physical description again matched that on Davis' driver's license. Ellis then examined a criminal warrants screen, which isolated the open warrant from the rest of the cases, and found that the driver's license number listed matched Davis' license number. Finally, Ellis went to the clerk's computer and had her pull up a "direct descriptors" screen, and the same information matched. Ellis personally questioned Davis and asked for his social security number, which matched the number on the direct descriptors screen. There were no "a/k/a's," middle names or "Jr.'s" on any of the screens examined by Ellis; all merely referenced "Sylvester Davis," the same name that appeared on Davis' license. In total, Ellis spent twenty-five to thirty minutes examining four or five computer screens, all of which contained matching information. Upon the completion of his investigation, Ellis concluded that Davis was the person named in the arrest warrant and took him into custody.

We believe the evidence shows that Ellis' investigation culminating in his decision to arrest Davis required personal deliberation, decision and judgment and was a discretionary function. *See Chambers,* 883 S.W.2d at 654.[10] An officer's decision regarding "if,

10. We believe the present case to be distinguishable from *Copeland v. Boone,* cited by Davis. 866 S.W.2d 55 (Tex.App.—San Antonio 1993,

writ dism'd w.o.j.). There the arresting officer was not called upon to investigate whether the presenting individual was the same person

how, and when to arrest a person" is discretionary. *Dent v. City of Dallas*, 729 S.W.2d 114, 116 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Likewise, a police officer is engaged in a discretionary function in determining "how to investigate, and to what extent to investigate before seeking a warrant." *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 121 (Tex. App—Houston [1st Dist.] 1995, no writ). We see no reason why the same investigatory discretion should not apply to an officer seeking to determine whether a presenting individual is the same individual named in an arrest warrant. In making this determination, Deputy Ellis was required to "pass on facts and determine his actions by the facts found," and was thus exercising a discretionary function. *Chapman*, 824 S.W.2d at 687.

■ Davis claims Ellis had no discretion to arrest anyone other than the person who matched the identifiers described in the warrant itself, and faults Ellis for failing to examine the actual warrant. However, Sheriff Klevenhagen testified that, according to the department's procedures, Ellis was not required to examine the actual warrant before making the arrest. The jury found that the sheriff had adopted reasonable internal procedures to ensure that only those persons are incarcerated for whom the sheriff or the deputy to whom he delegates those responsibilities has a good faith belief based upon objective circumstances that he possesses valid legal authority to imprison. Davis does not challenge this finding. Moreover, Davis' contention that Ellis should have examined the identifiers in the actual warrant goes to the element of good faith in the performance of his duties, and not to whether he was engaged in a discretionary function. As stated by the Texas Supreme Court in *Chambers*, "the court's focus should be on whether the officer is performing a discretionary function, not on whether the officer has discretion to do an allegedly wrongful act while discharging that function." 883 S.W.2d at 653.

We find that Deputy Ellis' investigation to determine whether Davis was the same individual named in the open arrest warrant required personal deliberation, decision and judgment, and was thus a discretionary function that invoked the protection of the official immunity defense. Because the official immunity defense was available to Ellis, the trial court did not err in admitting evidence regarding the good faith element of that defense. Point of error one is overruled.

■ In point of error two, Davis claims the trial court erred in submitting the question of false imprisonment to the jury because it was undisputed that Davis was not the individual named in the arrest warrant. Any alleged error in submitting the question, however, was rendered immaterial by the jury's affirmative answer to the official immunity question. Because submission of the jury question was not reasonably calculated to cause, and probably did not cause, the rendition of an improper judgment, there was no reversible error. *See Maddox v. Denka Chem. Corp.*, 930 S.W.2d 668, 670 (Tex.App.—Houston [1st Dist.] 1996, no writ); *see also* W. WENDELL HALL, REVISITING STANDARDS OF REVIEW IN CIVIL APPEALS, 24 ST. MARY'S L.J. 1041, 1056–57 (1993). Consequently, point of error two is overruled.

The judgment of the trial court is affirmed.

---

named in the warrant. Rather, the plaintiff wanted the arresting officer to disregard the warrant, which the officer had no discretion to do. Although Deputy Ellis could not disregard the warrant, he was required to investigate whether the presenting individual was the same person named therein. In making this determination, Ellis was required to exercise personal deliberation and judgment.