**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GRANT K. BEATTIE,

      Plaintiff-Appellant,

v.

STEVEN J SMITH, a tribal police officer
for the Prairie Band Potawatomi Tribal
Police Department, sued in his individual
and official capacity; RYAN BAUER, a
tribal police officer for the Prairie Band
Potawatomi Tribal Police Department,
sued in his individual and official
capacity; MICHAEL K. BOSWELL, a
Tribal Chief of Police for the Prairie
Band Potawatomi Tribal Police
Department, sued in his individual and
official capacity; BETH JAMES; MARIA
HUSKE; JEREMY RODECAP;
PRAIRIE BAND POTAWATOMI
NATION; PRAIRIE BAND
POTWATOMI TRIBAL POLICE
DEPARTMENT,

      Defendants-Appellees.

No. 13-3053
(D.C. No. 2:12-CV-02596-JTM-JPO)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

Grant K. Beattie was arrested at a resort operated by the Prairie Band Potawatomi Nation (PBPN or Tribe) and charged with lewd and lascivious behavior and disorderly conduct. He was tried and acquitted in state court. He then brought this civil rights action against the PBPN, its Tribal Police Department, and certain tribal police officers and resort security personnel, asserting claims under 42 U.S.C. § 1983 and Kansas state law. The tribal entities moved to dismiss his complaint, and the individual defendants moved for judgment on the pleadings. The district court granted both motions and closed the case. Mr. Beattie appeals. We have jurisdiction under 28 U.S.C. § 1291.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *Factual Allegations in the Complaint*

Mr. Beattie's complaint recites that on September 10, 2011, he and his wife were guests at the Prairie Band Casino & Resort (Resort), located on the PBPN's reservation in Kansas. That evening, his wife planned to go shopping, and he planned to watch a football game in the room. Both decided to bathe first. After his wife had finished bathing and was getting dressed, Mr. Beattie stripped down to his underwear in preparation for his bath. Before entering the tub, he walked his wife to the patio door in their hotel room.

Resort guests commonly enter and leave through their rooms' patio door to access the hotel's central courtyard. The glass patio doors and windows of the guest rooms are covered by two curtains, one made of solid fabric and the other of sheer material that permits limited visibility. When Mr. Beattie's wife left the room, the solid curtain was closed over the room's window and the sheer curtain was closed over both the window and the patio door.

Mr. Beattie's wife pulled the sheer curtain out of the way and left through the patio door. He kissed her goodbye, closed the door, and watched her from the doorway as she walked across the courtyard. With his left hand, Mr. Beattie held open the top portion of the sheer curtain so that he could observe his wife crossing the courtyard. He used his right hand to hold the lower portion of the sheer curtain closed, to avoid being seen in his underwear.

Ms. Robinson, a hotel guest who was in the courtyard area with her family, reported to a hotel clerk that she had "witnessed a man looking out the window of [Mr. Beattie's] room and masturbating." App. at 22 ¶ 54. Defendant Maria Huske, a Resort security officer, was dispatched to meet with Ms. Robinson. Ms. Robinson reported to her that "she saw [a] guest in [Mr. Beattie's] hotel room open his window shade [and] wrap it around his neck while he actively masturbated." *Id.* ¶ 56 (quoting Huske report).

Ms. Huske observed Mr. Beattie's room, saw him pull back the shade, and noted that he was wearing a black-t shirt that reached his mid-thigh level. Mr. Beattie was not wearing pants, and his t-shirt was sufficiently long that Ms. Huske could not tell whether he was wearing underwear. In later documenting the incident, she did not report observing him engaged in any lewd behavior.

Ms. Huske reported these events to her supervisor, defendant Jeremy Rodecap. Mr. Rodecap instructed the Resort's security dispatcher to contact the Tribal Police Department, which dispatched defendant officers Stephen J. Smith and Ryan Bauer to the scene. Officer Bauer contacted Ms. Robinson after he arrived at the Resort, but neither officer interviewed Ms. Robinson until after they had arrested Mr. Beattie.

At the Resort, Officer Smith spoke with Ms. Huske, who allegedly told him that "She seen [sic] the male standing in the window without any pants on and he was

masturbating." *Id.* at 23 ¶ 66 (quoting Smith report).[1] Ms. Huske informed Officer Smith where he could find Ms. Robinson, but he did not interview her. Instead, he joined Officer Bauer at the patio door to Mr. Beattie's room.

Mr. Beattie noticed the officers standing outside his door, so he opened it and asked them what was going on. The officers requested permission to come inside and talk to him. He agreed. Ms. Huske and an additional Resort security officer also entered the room.

After Officer Smith obtained Mr. Beattie's driver's license, Officer Bauer ran a criminal history check on Mr. Beattie, which showed no prior reported criminal history or incidents. Officer Smith interrogated Mr. Beattie, who denied Ms. Robinson's allegations.

Officer Bauer took Mr. Beattie's picture with his camera phone, then left the room. He returned after a moment, presumably after having shown the camera phone picture to either Ms. Robinson or Ms. Huske for identification purposes, and reported "Yup that's him." *Id.* at 25 ¶ 94. Officer Smith then asked Resort security officer Beth James whether she wanted to press charges. She responded, "Under the circumstances, yes." *Id.* ¶ 96. Officer Smith then read Mr. Beattie his *Miranda* rights, arrested him without a warrant, and transported him to jail.

---

[1] It is not clear from the complaint whether "She" refers to Ms. Robinson or Ms. Huske. If Ms. Huske, this would severely undercut Mr. Beattie's claim that the officers improperly relied on "limited, second-hand information from . . . [Ms.] Huske." Aplt. Opening Br. at 25. Read in the light most favorable to Mr. Beattie, we will assume "She" refers to Ms. Robinson.

At the time of arrest, Officer Smith purportedly told Mr. Beattie, "You are being accused by two witnesses one a guest and one a hotel employee that you were standing at the glass with a towel around you between the curtain and the glass fully exposing yourself [sic] and masturbating." *Id.* at 26 ¶ 105. In response to Mr. Beattie's denials, Officer Smith asserted that "two separate people at two different times advise[d that] he was doing such activity." *Id.* at 27 ¶ 118 (internal quotation marks omitted). Officer Smith also told Mr. Beattie that he was being charged with disorderly conduct because "anytime people are believed by [tribal police] to violate [the Kansas lewd and lascivious behavior statute] the [Tribal Police Department] always includes an additional charge for violating [the disorderly conduct statute]." *Id.* at 28 ¶ 131. Officer Smith was at the scene for a total of nine minutes.

A criminal complaint was eventually issued charging Mr. Beattie with a misdemeanor violation of Kansas Stat. Ann. § 21-5513(a)(2) (lewd and lascivious behavior) and with violating § 21-6203(a)(3) (disorderly conduct). He was tried and found not guilty of both charges.

B. *District Court Proceedings and Issues on Appeal*

Mr. Beattie's federal court complaint asserted eight causes of action against the defendants, including § 1983 claims against the officers for arresting him without

probable cause or exigent circumstances in violation of the Fourth Amendment.[2]  The

district court dismissed the § 1983 claims against the officers, concluding that

Mr. Beattie failed to state a claim and that the officers were entitled to qualified

immunity.  It dismissed the state-law claims against the individuals because those

claims were subject to the discretionary function exception in the Kansas Tort Claims

Act (KTCA).  It dismissed the claims against the Tribal Defendants because the

Tribal Police Department is not a jural entity and because Mr. Beattie failed to plead

a sufficient claim for vicarious liability against either the Tribe or the Tribal Police

Department.

On appeal, Mr. Beattie has abandoned all of his claims except for his § 1983

claims against Officers Smith and Bauer; his Kansas state-law claims for false

arrest/false imprisonment and malicious prosecution against the officers and Resort

security employees Beth James, Maria Huske, and Jeremy Rodecap; and his

"vicarious liability claims against the Tribal Defendants."  Aplt. Opening Br. at 16.

## II.  **DISCUSSION**

"We review de novo the district court's granting of a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6)," *Slater v. A.G. Edwards & Sons, Inc.*,

719 F.3d 1190, 1196 (10th Cir. 2013) (internal quotation marks omitted), including

---

[2] His complaint included § 1983 claims based on "summary punishment and denial of due process," false arrest, malicious prosecution, "violative processes, procedures, practices, and customs"; and state-law claims for false arrest/false imprisonment, malicious prosecution, negligent supervision, and negligent training.

the grant of a motion to dismiss based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). "To defeat a motion to dismiss, a complaint must plead facts sufficient to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

"We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (internal quotation marks omitted). "[W]e accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Id.* (internal quotation marks omitted). "A motion for judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

### A. *Claims Against Officers Smith and Bauer*

### 1. **Fourth Amendment § 1983 Claim**

The district court dismissed the § 1983 claims against the officers both for failure to state a claim and because the officers were entitled to qualified immunity. We affirm the dismissal because the officers were entitled to qualified immunity. To survive a motion to dismiss for qualified immunity, a plaintiff's complaint must allege facts sufficient to show that the defendants plausibly violated his federal rights, and that those rights were clearly established at the time. *See Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Once defendants have asserted a qualified-immunity defense, it is the plaintiff's burden to show, "by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits" that the right allegedly violated was clearly established at the time of the conduct at issue. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

   a. *Probable Cause and Qualified Immunity*

Mr. Beattie contends that the officers lacked probable cause to arrest him. Although we conclude that Mr. Beattie's complaint states a plausible lack of probable cause claim, he fails to show that the officers violated clearly established law.

   i. <u>Violation of a Constitutional Right</u>

We begin by asking whether the complaint plausibly alleges a violation of a constitutional right. We ask whether, under the facts alleged, an objectively reasonable officer could have concluded that there were sufficient facts at the time of the arrest to supply probable cause. *See Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (en banc) (stating objective test for probable cause). If not, the arrest was unlawful. "Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Id.*

The officers assert they had probable cause to arrest Mr. Beattie based on Ms. Huske's statements to Officer Smith. To defeat qualified immunity Mr. Beattie

must show that these statements "did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to conclude" that Mr. Beattie committed the charged crimes. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). In particular, he must show that "the information known to [the officers] did not establish probable cause." *Id.*

To meet his burden, Mr. Beattie argues the officers relied on "limited, second-hand information from [Ms.] Huske." Aplt. Opening Br. at 25. They thereby impermissibly delegated to a security guard their duty to investigate his alleged crime and to make an independent probable cause determination. Specifically, he complains that the officers failed to interview Ms. Robinson or any other potential witnesses who were readily available at the scene.

We have held that "the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Cortez*, 478 F.3d at 1117 (internal quotation marks omitted). The question here is whether it was reasonable for Officer Smith to accept Ms. Huske's report of her conversation with Ms. Robinson without talking personally to Ms. Robinson or to anyone else who might have been a firsthand witness to the events.

The duty to investigate is subject to a standard of reasonableness. *See id.* Mr. Beattie's complaint does not assert any specific facts known to the officers *at the*

*time of arrest* that would have called Ms. Huske's or Ms. Robinson's credibility into question. Nevertheless, he does allege that the officers failed to interview Ms. Robinson, a readily available eyewitness whose credibility was crucial to the case against Mr. Beattie, before arresting him. Accepting the complaint's allegations as true and understanding the alleged facts in the lights most favorable to Mr. Beattie, we are unable to say that Mr. Beattie's complaint fails to allege facts sufficient to show that the defendants plausibly violated his Fourth Amendment rights. But to say that the complaint alleges a violation of a clearly established right would go too far.

        ii. <u>Clearly Established Law</u>

Even if the reasonableness of the officers' investigation is subject to dispute, the officers were entitled to qualified immunity on the second prong of the inquiry: whether Mr. Beattie's complaint pleads facts showing they violated clearly established law. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 81 U.S.L.W. 3600, 2013 WL 5878007, at \*2 (U.S. Nov. 4, 2013) (per curiam) (internal quotation marks omitted). "We do not require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks omitted). The cases Mr. Beattie cites do not clearly establish a duty to interview the alleged eyewitness under circumstances comparable to those in this case.

Mr. Beattie relies on *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998). There we denied qualified immunity to officers who arrested the plaintiff for shoplifting after they had viewed a videotape of the incident that supported the plaintiff's story that she had done no such thing. Under those circumstances, "[i]t was . . . not reasonable for the officers to rely on the security guards' allegations" that the plaintiff had stolen a ring from the store. *Id.* at 1257. The incident "was memorialized in its entirety on the videotape," which the officers had viewed and which should have exculpated the plaintiff. *Id.* Here, by contrast, no such exculpatory record allegedly existed that would have cast doubt on Ms. Huske's report to the officers.

Nor does *Cortez v. McCauley* clearly establish a duty to interview Ms. Robinson. In that case, officers responded to a telephone call from a nurse stating that a woman had brought her daughter to the hospital asserting that the child had complained that her babysitter's boyfriend had molested her. *Cortez*, 478 F.3d at 1113 (internal quotation marks omitted). Without (1) interviewing the girl, her mother, the nurse, or the attending physician; (2) inspecting the girl's clothing for signs of sexual assault; or (3) waiting for a preliminary report from the doctor, the officers arrested the "boyfriend" (actually the babysitter's husband). *Id.* at 1117. The hospital found no evidence of molestation, and the child's mother later admitted she had recently argued with the plaintiffs over child care.

We held in *Cortez* that "it was unreasonable for the officers to rely on the nurse's double-hearsay statement about what the girl said, when they could have interviewed the girl or her mother directly." *Id.* at 1119 n.12. Whether viewed as a case where more pre-arrest investigation was needed because the officers had insufficient information, or as one involving inadequate corroboration, "what the officers had fell short of reasonably trustworthy information indicating that a crime had been committed by [the husband-plaintiff]." *Id.* at 1117. Here, by contrast, no such corroborative expert advice or physical evidence was reasonably available, the eyewitness was not a potentially untrustworthy two-year-old child, and Officer Smith spoke to Ms. Huske rather than simply relying on information relayed by a telephone call.

Also unavailing are two other Tenth Circuit cases that Mr. Beattie mentions in this brief: *Romero*, and *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *vacated on other grounds*, 474 U.S. 805 (1985). In *Romero*, police officers arrested the plaintiff without a warrant and without interviewing his alibi witnesses. Although we stated the general rule that "the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene," *Romero*, 45 F.3d at 1476, we noted that the plaintiff did not contend that the defendant officer "failed to investigate fundamental evidence at the crime scene," *id.* at 1477. We concluded the officer should therefore have been granted qualified immunity. Here, as in *Romero*, the arresting officer reasonably "concluded based on the facts and information known

- 13 -

to him that probable cause existed to arrest [the plaintiff]." *Id.* at 1478. *Romero* does not clearly establish law in support of Mr. Beattie's claim.

In *Lusby*, the plaintiffs were customers at a T.G. & Y. store. They were arrested after one of them purchased a pair of sunglasses, then re-entered the checkout line to purchase some hairspray. An assistant manager at the store witnessed only the second purchase, and summoned an off-duty policeman employed by T.G. & Y. as a plainclothes security officer to investigate whether the sunglasses had been shoplifted. The security officer stopped the customer who purchased the sunglasses and asked him for a receipt. The customer explained that he had paid for the sunglasses but had lost the receipt. The security officer then informed him he was under arrest for shoplifting. Police officers who had arrived at the scene took the plaintiffs into custody. After the plaintiffs were arrested and transported to jail, the cashier informed managers at the store that the customer had paid her for the sunglasses. We agreed with plaintiffs that the officers' arrest, "based solely on [the security officer's] accusations and without any independent police investigation to ascertain probable cause, support[ed] the jury's finding of a civil rights violation." *Lusby*, 749 F.2d at 1434.

The facts in *Lusby* differ from those in this case. In *Lusby*, it should have been obvious that before the customer was arrested, *someone* needed to interview the cashier, who was likely the only person on the scene with actual knowledge concerning whether the customer had taken the sunglasses without paying for them—

an essential element of the crime. Even the security officer had not interviewed the cashier before speaking to the officers. Here, by contrast, Ms. Huske *had* interviewed Ms. Robinson, an eyewitness who claimed to have first-hand knowledge of facts required to supply probable cause to believe that Mr. Beattie had committed a crime.

Finally, *Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010), does not support Mr. Beattie's argument. In that case, officers arrested a male suspect after a witness had reported hearing a female yelling at a child. Before the plaintiff was arrested, the witness who heard the yelling provided further information that undermined probable cause, and no child was found at the residence.[3] Here, no such

---

[3] Mr. Beattie's other arguments concerning this Fourth Amendment claim fail under our qualified immunity analysis:

First, Mr. Beattie argues that the officers unconstitutionally arrested him for disorderly conduct—the charge they allegedly "tacked on" to the lewd and lascivious behavior charge. Even if probable cause did not exist to arrest and charge him with disorderly conduct, however, probable cause to arrest Mr. Beattie for lewd and lascivious behavior would have been sufficient to justify the arrest. "[T]he probable cause inquiry . . . requires merely that officers had reason to believe that a crime—any crime—occurred." *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009). "An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is *a* reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). Because no clearly-established law informed the officers that they lacked probable cause to arrest Mr. Beattie for lewd and lascivious behavior, his claim regarding disorderly conduct fails.

Second, he argues that Officer Smith's decision to seek a *misdemeanor* charge under Kan. Stat. Ann. § 21-5513, after he had previously arrested him for a *felony*

(continued)

- 15 -

information undermined probable cause, there was no ambiguity concerning the suspect, and Mr. Beattie was located in his room where the Ms. Huske said he would be found. In short, Mr. Beattie has failed to show that the officers violated clearly established law based on lack of probable cause.

b. *Exigent Circumstances and Qualified Immunity*

Mr. Beattie contends that in addition to probable cause, the officers needed either a warrant or exigent circumstances to enter his hotel room to arrest him there.[4] In a public place, officers may arrest an individual without a warrant or exigent circumstances, so long as they have probable cause to make the arrest. *United States v. Watson*, 423 U.S. 411, 423–24 (1976). But if officers seek to arrest an individual

---

violation of the statute, suggests the arrest was unsupported by probable cause. The only difference between a felony and a misdemeanor violation of the statute concerns whether a person under the age of 16 was present. *See* Kan. Stat. Ann. § 21-5513(b). According to Mr. Beattie's complaint, Officer Smith told him after the arrest that "since there were children in the area, it will be a felony offense." Aplt. App. at 129 ¶ 129. The complaint does not allege that Officer Smith's statement concerning the presence of children was false. Given this, Mr. Beattie fails to show that the arrest for a felony, although only a misdemeanor was ultimately charged, violated his constitutional rights.

Finally, Mr. Beattie argues that Officer Smith's asking Ms. James, a member of the tribal security staff, whether she wanted to press charges delegated the probable cause determination to Ms. James. Whether Ms. James wanted to press charges has nothing to do with probable cause, and the argument therefore fails to state a plausible claim. *See Slater,* 719 F.3d at 1196 (stating plausibility standard).

[4] "A motel room may be considered a 'dwelling' for purposes of the validity of a warrantless arrest." *United States v. Wicks*, 995 F.2d 964, 969 (10th Cir. 1993).

within his dwelling, they must also have the right to enter the home to effectuate the arrest. *See Payton v. New York*, 445 U.S. 573, 590 (1980).

Officers may gain a right of entry in several ways. First, they may obtain an arrest warrant. *Id.* Absent a warrant, the officers may enter a dwelling if they have probable cause for the arrest and exigent circumstances exist to justify the entry. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."). Finally, even if the officers have neither a warrant, nor probable cause and exigent circumstances, "[a]n individual may also consent to a warrantless intrusion into his home." *Hogan v. Cunningham*, 722 F.3d 725, 732 (5th Cir. 2013).

Here, it is undisputed that Mr. Beattie voluntarily permitted the officers to enter his room. Mr. Beattie points to no clearly-established law holding that where valid consent has been given to the officer's entry into the suspect's dwelling, the officer must also show that probable cause and exigent circumstances justified the arrest that took place there. Nor have we found such authority. *See, e.g., United States v. Cruz-Mendez*, 467 F.3d 1260, 1265 (10th Cir. 2006) ("Consent can justify an entry into a home, regardless of whether there is probable cause."); *id.* at 1269 ("*Payton* holds only that "the Fourth Amendment . . . prohibits the police from making a warrantless and *nonconsensual* entry into a suspect's home in order to make a routine felony arrest. [Where] the officers' entry . . . was consensual, *Payton* does not apply."). *Cf. United States v. Morris*, 977 F.2d 677, 688 (1st Cir. 1992)

("[A] determination of whether probable cause or exigent circumstances existed will be unnecessary if a defendant voluntarily consents to [a warrantless] search."). Therefore, the officers were entitled to qualified immunity as to this portion of Mr. Beattie's claim as well.

2. **State Law Claims**

Mr. Beattie also argues that the district court erred in determining that his state-law claims against the officers were barred by the KTCA's discretionary function exception. *See* Kan. Stat. Ann. § 75-6104(e). He contends that Kansas law "does not grant officers a discretionary right to violate established law, i.e. the Fourth Amendment," Aplt. Opening Br. at 29, and that because the officers "lacked probable cause and exigent circumstances . . . they were afforded no discretion to execute a warrantless arrest, or to violate the Fourth Amendment," *id.*

The alleged Fourth Amendment violation here involves the adequacy of the officers' *investigation* before making an arrest. Under Kansas case law, the method of conducting an investigation falls within the scope of an officer's discretion. *See Soto v. City of Bonner Springs*, 238 P.3d 278, 286 (Kan. 2010) (citing cases describing investigatory procedures, such as "the precise steps to be taken . . . to verify personally identifying information," the "manner of conducting an investigation" and the "people to whom social workers converse in supervising child placements" as discretionary functions). The officers' decision to arrest Mr. Beattie was a discretionary decision because it involved "personal deliberation, decision and

- 18 -

judgment." *Id.* at 287 (quoting *Davis v. Klevenhagen*, 971 S.W.2d 111, 117 (Tex. App. 1998)). "An officer's decision regarding 'if, how, and when to arrest a person' is discretionary." *Id.* (quoting *Davis*, 971 S.W.2d at 117-18 (citation and emphasis omitted)). "Likewise, a police officer is engaged in a discretionary function in determining 'how to investigate, and to what extent to investigate before seeking a warrant.'" *Id.* (quoting *Davis*, 971 S.W.2d at 118 (citation and emphasis omitted)).

Mr. Beattie does not allege that the officers' conduct was "wanton" such that it would fall outside the discretionary function exception. *See id.* at 284-85 (discussing "wanton conduct" exception). Nor, as we have seen, did the officers' actions violate clearly-established Fourth Amendment law. The district court properly dismissed this state-law claim based on the discretionary function exception.

### B. State-Law Claims Against Ms. Huske, Ms. James, and Mr. Rodecap

Mr. Beattie argues that the district court incorrectly dismissed his false arrest and malicious prosecution claims against the Resort's security personnel.[5] In ruling on these claims, the district court stated as follows:[6]

---

[5] Although Mr. Beattie claims to have preserved his state-law claims against Officers Smith and Bauer, *see* Aplt. Opening Br. at 36, his argument concerning liability under the KTCA addresses only his claims against the Resort security personnel, *see id.* at 30-32. His sole argument concerning the KTCA claims against the officers concerns the discretionary function exception, which we have discussed, *supra*.

[6] The district court's analysis seems to have been directed primarily at the personal participation requirement for the § 1983 constitutional claims against the

(continued)

- 19 -

> Here, the allegations show only that [Ms.] Huske made a report, based upon her interview with [Ms.] Robinson, and that [Ms.] James later told the Tribal Police where they could find [Mr.] Beattie. They were present while the Tribal Police officers interrogated [Mr.] Beattie, and decided to press charges, again based on the word of one of their other guests. Even assuming that the Tribal Police should have conducted a better investigation, the plaintiff has failed to show how these hotel employees are legally responsible for the actions of the Tribal Police, or that the hotel employees had a duty to intervene in the police investigation.

Aplt. App. at 191.

1. **False Arrest**

With regard to his false arrest claim, Mr. Beattie argues that he was only required to allege that the Resort security employees "instigated the arrest, assisted in it, or by some means directed or encouraged it." Aplt. Opening Br. at 30 (citing *Thurman v. Cundiff*, 580 P.2d 893 (Kan. App. 1978)). But Kansas law provides that "the mere giving of information to a peace officer tending to show that a crime has been committed is not enough to render the informer guilty of resulting false imprisonment by the officer," and "[o]ne is not liable for false arrest where he merely states to a peace officer his knowledge of a supposed offense and the officer makes the arrest entirely upon his own judgment and discretion." *Thurman*, 580 P.2d at 898.

Mr. Beattie attempts to show that the security personnel were not mere passive reporters of an alleged crime but active facilitators of his arrest.

---

Resort security personnel. Mr. Beattie addresses the analysis specifically as it relates to the state-law claims. We will consider his argument in this context.

First, he argues that "Huske, Rodecap, and James [assisted in] criminal proceedings against Beattie *based on false and/or materially omitted information in their reports*." Aplt. Opening Br. at 31 (emphasis added). But of the three security personnel, only Ms. Huske is alleged to have filed a report concerning the incident. And her written report and video were prepared *after* the arrest. Probable cause is assessed at the time of the arrest. *See, e.g., Courtney v. Okla. ex rel. Dep't of Public Safety*, 722 F.3d 1216, 1225 (10th Cir. 2013). A report that came afterwards could not have influenced the officers to arrest Mr. Beattie.

Second, Mr. Beattie claims that the security personnel were "involved in creating the 9-minute 'investigation' leading to [his] arrest," Aplt. Opening Br. at 31, suggesting that they caused an abbreviated investigation. The complaint fails to allege that the security personnel encouraged the officers to cut short their questioning, caused them to not interview available witnesses, or urged them to hurry up and arrest Mr. Beattie. In short, Mr. Beattie's allegation is conclusory and unsupported.

Third, Mr. Beattie asserts that the security officers "detained and interrogated [Mr.] Beattie in his hotel room." *Id.* Although the complaint does state that Mr. Beattie permitted Ms. Huske and an unnamed "additional male security employee" to enter his room, Aplt. App. at 24 ¶ 73, there is no allegation that hotel security personnel detained Mr. Beattie or interrogated him there.

Fourth, Mr. Beattie asserts that Mr. Rodecap "initiated contact with the Tribal PD." Aplt. Opening Br. at 31. Merely contacting the police to investigate an alleged crime does not in itself constitute assistance in a wrongful arrest. *Thurman*, 580 P.2d at 898.

Finally, Mr. Beattie asserts that Ms. "James *expressly* requested [his] arrest." Aplt. Opening Br. at 31. According to the complaint, Ms. James merely responded to Officer Smith's inquiry concerning whether the Resort wished to press charges. Officer Smith did not ask Ms. James for her opinion nor did she offer one on whether probable cause existed, whether Mr. Beattie had committed the acts alleged against him, or whether he should be arrested. Notwithstanding Officer Smith's inquiry about pressing charges, Mr. Beattie fails to show that Officer Smith did not exercise his own discretion in determining whether probable cause existed for the arrest. *See Thurman*, 580 P.2d at 898.

2. **Malicious Prosecution**

Turning to his malicious prosecution claim against the Resort's security personnel, Mr. Beattie argues that *after* he was arrested, Ms. Huske, Ms. James and Mr. Rodecap possessed significant factual information that tended to discredit Ms. Robinson's story. The only specific example mentioned in Mr. Beattie's brief and drawn from his complaint concerns information that Ms. Robinson told Officer Bauer when he interviewed her after the arrest. This information was allegedly

inconsistent with what Ms. Huske told Officer Bauer after the arrest, or put in her report.

Although the complaint alleges numerous inconsistencies in the reports filed by the officers and Ms. Huske, there is no specific allegation that Ms. Huske lied to Officer Bauer; in fact, Mr. Beattie uses Ms. Huske's statements to call Ms. Robinson's story into question. Nor does he allege that Ms. Huske deliberately concealed post-arrest information from the officers. The only wrongdoing he now asserts by Ms. Huske or any Resort security person is that "[d]espite security's access to [the inconsistent] information, not one employee ever requested to drop the criminal case." Aplt. Opening Br. at 32. This is insufficient to state a claim for malicious prosecution against the Resort's security personnel. *See Lindenman v. Umscheid*, 875 P.2d 964, 974 (Kan. 1994) (setting forth elements of malicious prosecution under Kansas law).

C. *Vicarious Liability Claim Under the KTCA Against the Tribal Entities*

As we have seen, Mr. Beattie has failed to allege an actionable "negligent or wrongful act or omission" by any employee of the Tribal Entities acting within the scope of his or her employment. *See* Kan. Stat. Ann. § 75-6103(a) (stating standard for vicarious liability under KTCA). Therefore, any vicarious liability claim against

the Tribe and its police department, to the extent asserted in his complaint,[7] must fail as well.

## III.  **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge

---

[7] The district court found that the complaint did not expressly state a claim for vicarious liability.  *See* Aplt. App. at 193.