IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,034

MARK T. SCHREINER,
*Appellant,*

v.

CHAD S. HODGE and DANNY SMITH,
*Appellees.*

SYLLABUS BY THE COURT

1.

When the material facts are not in dispute, an order granting summary judgment presents only a question of law subject to de novo review.

2.

The Fourth Amendment to the United States Constitution prohibits state actors from performing unreasonable searches or seizures. An officer effects a seizure when the officer, through physical force or show of authority, has in some way restrained the liberty of a citizen.

3.

A brief seizure is reasonable for purposes of the Fourth Amendment to the United States Constitution when the officer has an articulable and reasonable suspicion, based in fact, that the detained person is committing, has committed, or is about to commit a crime.

1

4.

Whether a governmental entity is immune from liability under an immunity exception of the Kansas Tort Claims Act, K.S.A. 75-6101 et seq., is a question of law subject to de novo review. A governmental entity bears the burden to establish immunity under an immunity exception to the Act.

5.

In determining whether a governmental action is a discretionary function for the purposes of immunity under K.S.A. 75-6104(e), courts consider whether the judgment of the governmental employee is of the nature and quality which the Legislature intended to put beyond judicial review. The more a judgment involves the making of policy, the more it is of a nature and quality to be recognized as inappropriate for judicial review. However, Kansas Tort Claims Act immunity does not depend on the status of the individual exercising discretion and thus may apply to discretionary decisions made at the operational level as well as at the planning level.

6.

The determination of whether reasonable suspicion exists is an inherently discretionary act because it requires officers to evaluate the totality of the circumstances and make a judgment in light of their experience and training. And, generally, the types of decisions officers make over the course of an investigation, including whether reasonable suspicion exists to detain a person, are sufficiently grounded in policy to fall within the discretionary function immunity provision of K.S.A. 75-6104(e).

7.

The plain language of K.S.A. 75-6104(e) shows that the Legislature intended for immunity to apply to discretionary functions even when the exercise of discretion could be characterized as erroneous or mistaken under the facts.

8.

The breach of a legal duty does not necessarily foreclose discretionary function immunity as a defense against a tort claim.

9.

If an officer acts wantonly or maliciously, or if the officer breaches a specific duty owed to an individual rather than the public at large, then discretionary function immunity under K.S.A. 75-6104(e) does not apply.

Review of the judgment of the Court of Appeals in 55 Kan. App. 2d 50, 407 P.3d 264 (2017). Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed February 18, 2022. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Mark T. Schreiner*, appellant pro se, argued the cause, and was on the briefs.

*Christopher L. Heigele*, of Coronado Katz LLC, of Kansas City, Missouri, argued the cause, and was on the brief for appellees.

The opinion of the court was delivered by

WALL, J.: On an afternoon in June 2014, a police officer responded to a report of suspicious activity in a residential area of Johnson County. During the investigation, the officer encountered Mark T. Schreiner and detained him. Several other officers arrived at the scene before Schreiner was eventually released. Schreiner later filed suit against two of the responding officers to recover money damages under various state law tort theories, which allegedly arose from this encounter.

The district court granted the defendants' motion for summary judgment. The district court found the officers' conduct was privileged under common law because they had reasonable suspicion to detain Schreiner. The district court also found the officers

3

were entitled to discretionary function immunity under the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq. The Court of Appeals affirmed the district court's order in a split decision, and we granted Schreiner's petition for review.

After thorough review of the summary judgment record and analysis of the legal arguments, we conclude the officers lacked reasonable suspicion to detain Schreiner as part of their investigation. Thus, the officers' conduct was not privileged. Given this holding, the controlling question on appeal is whether the KTCA grants the officers immunity from Schreiner's state law tort claims. To resolve this question, we must interpret K.S.A. 75-6104(e) to determine whether the Legislature intended discretionary function immunity to apply, even though the officers' investigation did not satisfy Fourth Amendment scrutiny.

Ultimately, we conclude the officers' reasonable suspicion determination inherently required them to exercise judgment and discretion based largely on experience and training. While the Fourth Amendment to the United States Constitution and Kansas statute require officers to have reasonable suspicion before they may lawfully detain a person without a warrant, that requirement does not alter the discretionary nature of the officers' reasonable suspicion determination in the field. The plain language of the KTCA extends immunity to government employees performing discretionary functions "whether or not the discretion is abused." K.S.A. 75-6104(e).

Of course, the KTCA does not protect malicious or wanton misconduct or other conduct in breach of a specific legal duty. But without evidence of such misconduct, we conclude the officers are entitled to discretionary function immunity, even though their reasonable suspicion determination ultimately proved to be mistaken when subjected to after-the-fact scrutiny.

4

Therefore, we affirm the district court order granting summary judgment to the defendants.

FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2014, at approximately 12 p.m., Schreiner legally parked his truck, which had Missouri license plates, on a residential street in Mission, Kansas. Schreiner then exited his truck and walked south through a nearby wooded area.

Sometime later, someone called the police and reported Schreiner's truck as "suspicious." Officer Chad Hodge was dispatched to investigate the truck. While en route, Hodge learned that someone had previously reported the same vehicle parked in the area and the same individual leaving that vehicle and entering the wooded area. In his deposition, Hodge testified that he was also aware there had been peeping Toms, break-ins, and car burglaries in the area. When Hodge arrived, Schreiner was not present. Hodge collected the vehicle information and called it into dispatch.

At approximately 3 p.m., Schreiner returned to his truck through the wooded area. Hodge had just finished calling Schreiner's information into dispatch and approached Schreiner as he walked to his truck. Hodge asked Schreiner if the truck belonged to him. Schreiner told Hodge he refused to answer any questions and asked if he was free to go. Hodge told him yes, he was free to leave. Schreiner got into his truck, but Hodge took control of his left arm and ordered him back out.

Hodge asked Schreiner his name and Schreiner provided his driver's license. Hodge did not return the license when Schreiner asked for it back. After being denied his license, Schreiner began walking away. He did not get far before Hodge "took control of his right arm" and told Schreiner he was not under arrest, but not free to leave until the investigation was complete. Schreiner yelled, "If I'm not free to leave then I'm under

5

arrest." Then, Schreiner spontaneously lay down on the ground in a "defensive position." Undeterred, Hodge told Schreiner to get up and sit on the curb. Schreiner asked Hodge to call his supervisor.

Eventually, Hodge's supervisor, Sergeant Danny Smith, arrived at the scene along with two other officers. One of the officers was instructed to stand in front of Schreiner and prevent him from leaving. Schreiner first told the officers that he would not answer questions, but he ultimately relented. In his complaint, Schreiner alleged that he was detained for over an hour. However, in his deposition, Schreiner did not dispute the accuracy of dispatch records, which reflected that the encounter lasted less than an hour.

Hodge completed the investigation and determined that Schreiner had committed no crime. In his deposition, Hodge estimated that the entire encounter lasted 20 to 25 minutes.

Acting pro se, Schreiner sued the officers for various state law tort claims allegedly arising from his interaction with the officers. In his amended complaint, Schreiner asserted claims for assault, battery, unlawful seizure, false arrest, and false imprisonment against Hodge. Schreiner asserted claims for false arrest and false imprisonment against Smith. Hodge and Smith moved for summary judgment. They argued that Schreiner could not establish the elements of his claims because reasonable suspicion of criminal activity rendered their actions privileged under common law. They also asserted they were entitled to discretionary function immunity under the KTCA.

After a hearing, the district court granted summary judgment for the defendants. From the bench, the district court ruled that the officers' actions were "justified" because they were supported by reasonable suspicion of criminal activity and that the officers were entitled to immunity under the KTCA because they were performing a discretionary function. The district court's findings of fact and conclusions of law in support of the

6

summary judgment ruling were memorialized in its December 2, 2016, Journal Entry and Judgment.

Schreiner appealed. A majority of the Court of Appeals panel affirmed the district court's order granting summary judgment for the defendants. It held that reasonable suspicion of criminal activity supported Schreiner's detention and thus the officers were entitled to discretionary function immunity under K.S.A. 75-6104(e). *Schreiner v. Hodge*, 55 Kan. App. 2d 50, 60-61, 407 P.3d 264 (2017). We granted Schreiner's petition for review.

ANALYSIS

Schreiner challenges the Court of Appeals' decision affirming the district court's order granting summary judgment for Officer Hodge and Sergeant Smith.

I. *Standard of Review and Legal Framework*

The legal standard governing summary judgment is well established:

"""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."'" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

When, as here, the material facts are not in dispute, an order granting summary judgment presents only a question of law subject to de novo review. *Jason Oil Company v. Littler*, 310 Kan. 376, 380-81, 446 P.3d 1058 (2019).

Based on the uncontroverted facts, the district court concluded the defendants were entitled to judgment as a matter of law for two reasons: (1) the officers' actions were supported by reasonable suspicion of criminal activity and thus Schreiner could not establish that the officers' privileged conduct satisfied the elements of Schreiner's tort claims; and (2) the officers were immune from liability under K.S.A. 75-6104(e)—the KTCA's discretionary function exception to liability.

A majority of the Court of Appeals agreed that the officers had reasonable suspicion of criminal activity. Even so, it did not focus its analysis on the common-law privilege issue. Instead, the majority held the officers were performing a discretionary function when they stopped and investigated Schreiner, and consequently they were immune from liability under K.S.A. 75-6104(e). See *Schreiner*, 55 Kan. App. 2d at 61-63.

We begin our analysis by reviewing the reasonable suspicion issue. Then, we turn our attention to the question of discretionary function immunity under the KTCA.

*II. Schreiner's Detention Was Not Supported by Reasonable Suspicion*

The Fourth Amendment to the United States Constitution prohibits state actors from performing unreasonable searches or seizures. *State v. Chavez-Majors*, 310 Kan. 1048, 1053, 454 P.3d 600 (2019) (citing *Mapp v. Ohio*, 367 U.S. 643, 647, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 [1961]). An officer effects a seizure when ""the officer, by means

of physical force or show of authority, has in some way restrained the liberty of a citizen."'" *State v. Reiss*, 299 Kan. 291, 298, 326 P.3d 367 (2014).

A brief seizure is reasonable for Fourth Amendment purposes when "the officer has an articulable and reasonable suspicion, based in fact, that the detained person is committing, has committed, or is about to commit a crime." *State v. Glover*, 308 Kan. 590, 593, 422 P.3d 64 (2018) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]; *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 [1985]), *rev'd on other grounds*, 589 U.S.___, 140 S. Ct. 1183, 206 L. Ed. 2d 412 (2020). We refer to this type of constitutionally permissible seizure as an *investigatory detention*. *Glover*, 308 Kan. at 593. The Kansas Legislature has also codified law enforcement's authority to conduct an investigatory detention based on reasonable suspicion. See K.S.A. 22-2402(1) (granting officers discretion to stop any person the officer reasonably suspects of committing a crime).

"To have reasonable suspicion to detain an individual, '[a] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Glover*, 308 Kan. at 593 (quoting *Terry*, 392 U.S. at 21). We have recognized that "the suspicion must have '"a particularized and objective basis"' and be something more than 'an unparticularized suspicion or hunch.'" *Glover*, 308 Kan. at 593 (quoting *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 [1998]). "'What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.'" *State v. Lowery*, 308 Kan. 359, 366, 420 P.3d 456 (2018) (quoting *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 [2013]).

As the Court of Appeals observed, the seminal case on investigatory detention and reasonable suspicion is *Terry v. Ohio*. In *Terry*, the United States Supreme Court held that an officer did not violate the Fourth Amendment when he seized an individual

9

because the facts reasonably supported the officer's belief that the defendant was preparing to participate in a robbery. 392 U.S. at 28. The Court noted that the defendant's individual acts may have been innocent if considered in isolation, but

> "the story is quite different where, as here, two men hover about a street corner for an extended period of time, at the end of which it becomes apparent that they are not waiting for anyone or anything; where these men pace alternately along an identical route, pausing to stare in the same store window roughly 24 times; where each completion of this route is followed immediately by a conference between the two men on the corner; where they are joined in one of these conferences by a third man who leaves swiftly; and where the two men finally follow the third and rejoin him a couple of blocks away." 392 U.S. at 23.

The Court also noted that the officer had "30 years' experience in the detection of thievery from stores in this same neighborhood," which bolstered the reasonableness of his suspicions. 392 U.S. at 23.

### A. Application of Fourth Amendment Principles to the Detention of Schreiner

The Court of Appeals majority saw parallels between the facts in this case and the facts in *Terry*, but we disagree. In *Terry*, the officer observed the defendant for several minutes before the stop. From this period of observation, the officer was able to point to specific behaviors that, based on his extensive experience in detecting theft, led him to suspect the defendant was preparing to commit robbery.

In contrast, Officer Hodge never articulated anything about Schreiner or Schreiner's vehicle that led him to believe Schreiner was committing any crimes. During his deposition, Hodge explained that upon arriving at Schreiner's truck, he considered all the hypothetical crimes the absent driver could possibly be committing in the area:

10

"Okay. Initial thoughts upon arrival were why do I have a vehicle parked in a residential area and the driver did not enter a residence. He entered the woods instead of a residence. To me in my mind, what's running through my mind is where [is] this person at, is he over in the apartment complex committing vehicle burglaries, is he walking around in the neighborhood looking in windows, is he up at the businesses just to the south trying to steal a car, trying to commit burglaries. Same things go with the apartment complex just to the west. That's what was running through my head."

Nevertheless, Hodge stated that nothing about Schreiner's vehicle made him believe it had been involved in a crime. Hodge also said he had not witnessed Schreiner commit any crimes, and that Schreiner did not fit the description of any suspects from any known crimes. And while Hodge found Schreiner's behavior to be "evasive" and "erratic," and perceived Schreiner as "nervous," he never connected this to criminal activity.

The Court of Appeals majority also aligned this case with *State v. Reason*, 263 Kan. 405, 951 P.2d 538 (1997), but again we find the comparison inapt. In *Reason*, an officer approached a luxury car with temporary out-of-state tags parked in a public parking lot on a hot afternoon. He did not see anyone in or around the car, so he suspected it might have been abandoned or was being stripped. When he approached, he noticed Reason and another person inside the car who was asleep or unconscious. The officer asked Reason if he was okay and whether he owned the vehicle. Reason provided his name and said he owned the vehicle, but he also said his wallet had been stolen and that he had no identification on him. The officer then began running warrant and vehicle identification number (VIN) checks.

This court characterized the initial encounter—the officer's approach and initial questions—as a voluntary encounter that did not trigger Fourth Amendment protections. But as soon as the officer requested identification and registration and began running warrant and VIN checks, the voluntary encounter began to resemble an investigatory detention, at which point the officers would need to establish reasonable suspicion of

illegal activity to justify the detention. But even viewing the interaction as an investigatory detention, this court concluded that the officers had reasonable suspicion based on "Reason's claim of vehicle ownership without presenting any vehicle registration or personal identification." 263 Kan. at 412.

The Court of Appeals majority here turned to *Reason* to hold that "Schreiner's refusal to answer when Hodge asked if the truck was his certainly provided the officer with justification to investigate." *Schreiner*, 55 Kan. App. 2d at 60. But Schreiner's case is distinguishable from *Reason* because it did not begin with a voluntary encounter. Schreiner refused to reply when Hodge asked if he owned the truck. Schreiner did not voluntarily choose to engage with an officer, tell the officer that he owned the vehicle, and then fail to produce evidence of vehicle registration or identification, as in *Reason*.

As Judge Atcheson pointed out in his dissent in this case, Schreiner's refusal to answer questions cannot serve as a basis for reasonable suspicion. If the officers did not have reasonable suspicion of criminal activity before Schreiner refused to answer questions, as the majority implied, then the encounter with Hodge was only permissible under the Constitution if it was a voluntary encounter. And we have acknowledged that a person's "lack of response" during a voluntary encounter "cannot be weighed against him [or her]." *State v. Andrade-Reyes*, 309 Kan. 1048, 1057, 442 P.3d 111 (2019).

> "In a voluntary encounter, '[t]he person approached . . . need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.' And if the person declines, '[h]e may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.' [Citations omitted.]" 309 Kan. at 1057.

The facts here are more akin to those in *Andrade-Reyes*, where this court held that officers did not have reasonable suspicion to perform an investigatory detention. 309 Kan. at 1067. In *Andrade-Reyes*, just after midnight, two officers noticed a legally parked

car in a dark parking lot with two individuals inside. The officers approached the car and directed flashlights inside. Andrade-Reyes, who was in the car, reached down toward the floorboard and then sat upright with his hands clenched and held in front of him. The officer asked Andrade-Reyes what was in his hands. Andrade-Reyes did not answer or open his hands. He eventually moved one hand, dropped something on the ground, and opened the hand to show the officer it was empty. The officer asked what was in his other hand and then ordered him to open it. When Andrade-Reyes complied, he dropped a bag of cocaine.

We concluded that the officers did not have reasonable suspicion of criminal activity to support their investigatory detention—which consisted of one officer's repeated requests and eventual order for Andrade-Reyes to open his hands. Before Andrade-Reyes dropped the bag of cocaine,

> "the officers knew only that, after midnight, Andrade-Reyes sat in a car legally parked in a high-crime area, he was extremely nervous, he had reached toward the floor, his hands were clenched, and he did not respond to Officer Larson's questions. These facts did not cause either officer to articulate a subjective belief that a particular crime had occurred, was occurring, or was about to occur or even that they reasonably suspected any criminal activity." 309 Kan. at 1058.

Here, there are even fewer indicators of criminal activity than in *Andrade-Reyes*. Schreiner left his truck legally parked in an area where officers were aware other crimes had taken place. The officer had knowledge that Schreiner or someone driving Schreiner's truck had done the same thing a few weeks earlier. Upon returning, Schreiner refused to answer any of the officers' questions and attempted to leave. Neither officer testified that he reasonably believed Schreiner had committed, was committing, or was about to commit a crime. We conclude these circumstances do not support the lower courts' conclusions that the officers had reasonable suspicion of criminal activity.

13

*B.   The Officers' Actions Were Not Privileged*

The district court granted summary judgment for the defendants, in part, because it concluded the defendants' actions were "justified" by their reasonable suspicion of criminal activity and, consequently, Schreiner could not establish the elements of his tort claims. Because we conclude the officers here lacked reasonable suspicion of criminal activity, their conduct was not privileged. The district court erred when it granted summary judgment on these grounds, and the Court of Appeals erred in affirming this legal conclusion.

We must now determine whether the defendants were, nonetheless, entitled to summary judgment based on discretionary function immunity under the KTCA.

## III.  The Officers Are Entitled to Discretionary Function Immunity Under the KTCA

The district court and the Court of Appeals concluded the defendants were entitled to summary judgment under the KTCA because they were performing a discretionary function when they committed the allegedly tortious conduct. Consistent with Judge Atcheson's dissenting opinion, Schreiner argues the officers were not performing a discretionary function because they stopped and investigated him without reasonable suspicion of criminal activity.

*A.   Standard of Review and Legal Framework*

As with the previous issue, our review of an order granting summary judgment based on undisputed facts is unlimited. *Jason Oil Company*, 310 Kan. at 380-81. Furthermore, this issue requires us to construe the immunity provisions of the KTCA. "Whether 'a governmental entity is immune from liability under an immunity exception of the [KTCA] is a matter of law. Accordingly, appellate review is de novo.'" *Williams v.*

14

*C-U-Out Bail Bonds*, 310 Kan. 775, 794, 450 P.3d 330 (2019) (quoting *Soto v. City of Bonner Springs*, 291 Kan. 73, Syl. ¶ 4, 238 P.3d 278 [2010]).

To the extent this issue requires us to interpret the KTCA, the rules of statutory construction also apply. The most fundamental rule of statutory construction is the intent of the Legislature governs if that intent can be ascertained. *State v. Spencer Gifts*, 304 Kan. 755, 761, 374 P.3d 680 (2016). "Reliance on the plain and unambiguous language of a statute is 'the best and only safe rule for determining the intent of the creators of a written law.'" 304 Kan. at 761 (quoting *Merryfield v. Sullivan*, 301 Kan. 397, 399, 343 P.3d 515 [2015]). If there is ambiguity in the statute's language, we resort to legislative history and canons of construction to glean the Legislature's intent. *In re Paternity of S.M.J. v. Ogle*, 310 Kan. 211, 212-13, 444 P.3d 997 (2019).

### B.   The KTCA

Enacted in 1979, the KTCA transformed the law regarding governmental tort liability in Kansas. Prior to its enactment, Kansas had adhered to the common law doctrine of governmental immunity, which generally shielded cities, counties, and the state from liability when their employees acted negligently or wrongfully. As this court has explained,

> "'The doctrine of governmental immunity was held to exempt governmental entities from privately instituted civil suits without the expressed consent of the sovereign. The doctrine was founded upon the belief the courts, which derived their power from the sovereign, could not have been empowered to enforce such authority against the sovereign; that the king could do no wrong, nor could he authorize such conduct while acting in his sovereign capacity, for no man can do by his agents and officers that which he cannot do by himself. Under the doctrine of immunity for governmental officers, the common law recognized the necessity of permitting public officials to perform their official duties free from the threat of personal liability.'" *Collins v. Heavener Properties,*

15

*Inc.*, 245 Kan. 623, 628, 783 P.2d 883 (1989) (quoting *Siple v. City of Topeka*, 235 Kan. 267, 169-70, 679 P.2d 190 [1984]).

The KTCA modified this common-law doctrine and essentially subjected governmental entities to vicarious liability under the doctrine of respondeat superior, making such entities liable for the tortious conduct of their employees in the same way that a private employer would be. Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years*, 52 U. Kan. L. Rev. 939, 944 (2004).

The general rule of liability is set forth in K.S.A. 75-6103(a), which provides:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

Consistent with K.S.A. 75-6103(a), we have frequently observed that "liability is the rule and immunity is the exception" under the KTCA. *Soto*, 291 Kan. at 78. Yet, the exceptions to the general rule of liability are numerous and confirm "there has been no wholesale rejection of immunity by the Kansas Legislature." *Robertson v. City of Topeka*, 231 Kan. 358, 360, 644 P.2d 458 (1982); see also *Mendoza v. Reno County*, 235 Kan. 692, 693, 681 P.2d 676 (1984) ("There are, however, numerous exceptions to this general rule of liability which 'indicates there has been no wholesale rejection of immunity by the Kansas Legislature.'"); McAllister and Robinson, *The Potential Civil Liability of Law Enforcement Officers and Agencies*, 67 J.K.B.A. 14, 16 (September 1998) (noting KTCA "is far from a complete relinquishment of sovereign immunity from suit").

The KTCA enumerates 24 specific exceptions from liability. Among those exceptions, the one most relevant to our analysis is the discretionary function immunity provided under K.S.A. 75-6104(e), which states:

16

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."

K.S.A. 75-6104 further clarifies that "[t]he enumeration of exceptions to liability in this section shall not be construed to be exclusive nor as legislative intent to waive immunity from liability in the performance or failure to perform any other act or function of a discretionary nature."

    C.   *Meaning and Scope of the KTCA's Discretionary Function Immunity Provision*

To determine whether K.S.A. 75-6104(e) bars Schreiner's tort claims, "the Court must determine whether [defendants'] alleged tortious conduct occurred during the performance of a discretionary function." *Stead v. U.S.D. No. 259,* 92 F. Supp. 3d 1088, 1113 (D. Kan. 2015). A governmental entity bears the burden to establish immunity under this exception. *Williams*, 310 Kan. at 795 (citing *Soto*, 291 Kan. 73, Syl. ¶ 5). But this framework begs the question: "What constitutes a discretionary function?"

The KTCA does not define the term "discretionary function," and the legislative history offers no insight into the intended meaning. However, K.S.A. 75-6104(e) is patterned after a provision in the Federal Tort Claims Act (FTCA) that likewise carves out immunity for discretionary functions. *Carpenter v. Johnson*, 231 Kan. 783, 785, 649 P.2d 400 (1982); *Robertson*, 231 Kan. at 360. And we have previously looked to the

17

interpretation of the FTCA's discretionary function exception in construing the meaning of K.S.A. 75-6104(e). See *Robertson*, 231 Kan. at 360-62.

K.S.A. 75-6104(e)'s federal counterpart provides that the FTCA's liability provisions do not apply to:

"Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (2018).

The FTCA's discretionary function exception applies only to those acts that "'involv[e] an element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 [1988]). But not every act involving an element of judgment will qualify for immunity. Rather, "[b]ecause the purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,' . . . the exception 'protects only governmental actions and decisions based on considerations of public policy.' [Citations omitted.]" *Gaubert*, 499 U.S. at 323.

Even so, courts have not narrowly construed the immunity provision to apply only to those decisions made by personnel at the planning or policy-making level of government (to the exclusion of decisions made by personnel at the operational or management level of government). 499 U.S. at 325. Indeed, government employees at the operational and management level frequently exercise discretion based on, or in furtherance of, established policy considerations. Thus, whether the FTCA's discretionary

18

function exception applies depends not on "'the status of the actor'" but rather "'the nature of the conduct.'" 499 U.S. at 325.

We have interpreted K.S.A. 75-6104(e) in a similar fashion, recognizing it is the nature and quality of the discretion exercised, rather than the status of the employee, that determines whether certain acts or omissions are entitled to immunity. See *Soto*, 291 Kan. 73, Syl. ¶ 6 ("In deciding whether the discretionary function exception of the Kansas Tort Claims Act applies, it is the nature and quality of the discretion exercised which should be the focus rather than the status of the employee exercising the discretion."). This construction is bolstered by the Legislature's 1987 amendment to K.S.A. 75-6104(e), which clarified that discretionary function immunity would apply "regardless of the level of discretion exercised." L. 1987, ch. 353, sec. 3.

Thus, to determine whether a government employee's function or duty is discretionary for the purposes of the KTCA, courts must ask "whether the judgment of the governmental employee is of the nature and quality which the legislature intended to put beyond judicial review." *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, 452, 912 P.2d 729 (1996). "'The more a judgment involves the making of policy[,] the more it is of a "nature and quality" to be recognized as inappropriate for judicial review.'" *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 234, 262 P.3d 336 (2011) (quoting *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 365, 819 P.2d 587 [1991]). However, "'[KTCA] immunity does not depend upon the status of the individual exercising discretion and thus may apply to discretionary decisions made at the operational level as well as at the planning level.'" *Thomas*, 293 Kan. at 235 (quoting Westerbeke, 52 U. Kan. L. Rev. at 960).

*D. Police Investigations and Reasonable Suspicion Determinations Fall Within the Scope of K.S.A. 75-6104(e)*

With this analysis in mind, we turn to the conduct in question. Schreiner's tort claims arose from the officers' investigation of a citizen's report of suspicious activity and, more specifically, their determination that the totality of the circumstances created reasonable suspicion to detain Schreiner during the investigatory process.

We have consistently found the investigatory methods and procedures employed by governmental employees to be matters requiring the exercise of judgment and discretion. *Soto*, 291 Kan. at 85 (noting by way of example that "the precise steps to be taken . . . to verify personally identifying information," the "manner of conducting an investigation," and the "people to whom social workers converse in supervising child placements" are discretionary functions); see also *Awad v. United States*, 807 Fed. Appx. 876, 880 (10th Cir. 2020) (unpublished opinion) (manner in which law enforcement agents conduct their investigation and identify suspects involves elements of judgment or choice).

Likewise, an officer's determination whether reasonable suspicion exists is an inherently discretionary process. Before officers decide to detain or stop a person, they must evaluate the totality of the circumstances and determine whether reasonable suspicion exists—a judgment officers make based largely on their experience and training. See *Lowery*, 308 Kan. at 366. As such, law enforcement's reasonable suspicion determination necessarily entails the exercise of judgment and discretion. See *Thomas*, 293 Kan. at 234-35 (whether a particular judgment requires a government employee to use his or her expertise is a factor relevant to determining whether a particular act is discretionary); see also *Odom v. Wayne Co.*, 482 Mich. 459, 476, 760 N.W.2d 217 (2008) (characterizing officers' exercise of judgment "to determine whether there is reasonable suspicion to investigate" as a discretionary, rather than ministerial, act); *Beattie v. Smith*,

20

543 Fed. Appx. 850, 860 (10th Cir. 2013) (unpublished opinion) (applying Kansas law and finding officers' determination that probable cause existed based on their investigation of a report of potential criminal activity is a discretionary function); *Magnan v. Doe*, Civil No. 11-753 (JNE/SER), 2012 WL 5247325, at *14 (D. Minn. 2012) (unpublished opinion) ("The determination of whether sufficient reasonable suspicion is present to detain a person or seize property is a discretionary decision made by police officers.").

Moreover, an officer's exercise of this discretion in the field implicates matters of policy sufficient to invoke K.S.A. 75-6104(e). For one, officers investigating potential crimes, like Hodge and Smith, are acting within the scope of their employment to provide police protection, a traditional governmental function. See *Woods v. Homes & Structures of Pittsburg, Kansas*, 489 F. Supp. 1270, 1296 (D. Kan. 1980). Where the conduct in question relates to the performance of traditional governmental functions, we have typically found the conduct to be sufficiently policy-oriented to remove it from judicial second-guessing and place it within the scope of K.S.A. 75-6104(e). See, e.g., *Bolyard*, 259 Kan. at 455 (SRS's placement decision to protect child's welfare); *Mills v. City of Overland Park*, 251 Kan. 434, 446-48, 837 P.2d 370 (1992) (law enforcement officers' decision not to detain intoxicated patron); *Robertson*, 231 Kan. at 362-63 (law enforcement officers' decision to remove homeowner from premises rather than trespasser).

Furthermore, law enforcement's authority to detain third parties has been established as a matter of policy through K.S.A. 22-2402(1). That statute provides that, "[w]ithout making an arrest, a law enforcement officer *may* stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime." (Emphasis added.) K.S.A. 22-2402(1). As the Court of Appeals observed, the statute's use of the term "may" is significant because it reflects the discretionary nature of an investigatory stop—law enforcement officers have the choice

to stop someone when reasonable suspicion exists, but they are not required to do so. See *Schreiner*, 55 Kan. App. 2d at 54. And, as previously noted, an officer's determination whether reasonable suspicion exists inherently requires an exercise of discretion based on the officer's experience and training. Because the Legislature defined this authority (and related conditions and limitations) in statute, we presume the exercise of such powers to be sufficiently grounded in governmental policy to fall within the scope of K.S.A. 75-6104(e). See *Gaubert*, 499 U.S. at 324 ("When established governmental policy, as expressed or implied by statute . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.").

Finally, the investigation of a report of criminal activity requires officers to make informed judgments on a variety of other policy-related matters. These decisions include, for example, whether the potential threat to public safety and the totality of the circumstances justify detention of a suspect, what investigative techniques are most appropriate, and what resources to allocate to a particular investigation. In turn, these discretionary decisions are grounded in economic, political, and social policy considerations. See *Awad*, 807 Fed. Appx. at 881 (describing how federal agents' "decision whether to investigate, as well as decisions concerning the nature and extent of an investigation, are subject to economic, political, and social policy considerations").

For these reasons, we conclude that an officer's decision whether and how to investigate a crime, along with their reasonable suspicion determination, require the type of policy-based judgments the Legislature intended to insulate from tort liability under the discretionary function exception in K.S.A. 75-6104(e).

*E. The Lack of Reasonable Suspicion Does Not Preclude Discretionary Function Immunity*

Schreiner and the dissent contend that our holding on the issue of privilege, i.e., that defendants lacked objectively reasonable suspicion to detain Schreiner under Fourth Amendment standards, forecloses discretionary function immunity as a matter of law. They reason that law enforcement officers lack discretion to violate the Fourth Amendment, or K.S.A. 22-2402(1) for that matter, and thus those provisions stripped defendants' conduct of its discretionary nature.

But whether defendants, in fact, correctly determined that reasonable suspicion existed under Fourth Amendment standards is a red herring. Here, our task is to properly construe the KTCA. And the plain language of K.S.A. 75-6104(e) simply does not support a rule that precludes discretionary function immunity any time a court determines, in hindsight, that the government employee's judgment was erroneous, mistaken, or otherwise constituted an abuse of discretion.

The plain language of K.S.A. 75-6104(e) extends discretionary function immunity to government employees exercising or failing to exercise a discretionary function, "whether or not the discretion is abused." The plain meaning of this phrase signifies that the Legislature intended immunity to apply to discretionary functions even when the exercise of discretion could be characterized as erroneous, mistaken, or even unconstitutional. See *Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021) (construing similar language under FTCA and concluding that "there is nothing in the statutory language that limits application of this exception based on the 'degree' of the abuse of discretion or the egregiousness of the employee's performance"; "Congress could have adopted language that carved out certain behavior from this exception—for example . . . a constitutional violation," but did not do so); *Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) (rejecting plaintiff's argument that no one has discretion

23

to violate the Constitution; nothing in the language of the FTCA "suggests that some discretionary but tortious acts are outside the FTCA while others aren't"); *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972) (plaintiff's "exclusion from Fort Sheridan was based upon Colonel Nichols' exercise of discretion, albeit constitutionally repugnant, and therefore excepted her claim from the reach of the [FTCA] under 28 U.S.C. § 2680[a]"). In other words, the key inquiry under K.S.A. 75-6104(e) is "not about how poorly, abusively, or unconstitutionally the employee exercised his or her discretion but whether the underlying function or duty itself was a discretionary one." *Shivers*, 1 F.4th at 931 (interpreting discretionary function immunity under FTCA).

Consistent with this interpretation, we have held that the breach of a legal duty does not necessarily foreclose discretionary function immunity under the KTCA. See *Soto*, 291 Kan. at 80 ("[I]f there is a duty owed [and breached], the discretionary function exception to liability is not necessarily barred as a defense."); *Schmidt v. HTG, Inc.*, 265 Kan. 372, 392, 961 P.2d 677 (1998) ("Although governmental entities do not have discretion to violate a legal duty, we have not held that the existence of any duty deprives the State of immunity under the discretionary function exception."). After all, a tort, by definition, involves the breach of a legal duty. See *Mills*, 251 Kan. at 445 ("A tort is a violation of a duty imposed by law."). If all alleged breaches of a legal duty foreclosed immunity under K.S.A. 75-6104(e), that provision would never apply in common-law tort actions and K.S.A. 75-6104(e) would be rendered meaningless. See *Soto*, 291 Kan. at 80. Such an interpretation cannot withstand scrutiny under our traditional canons of construction. See *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014) (court favors statutory constructions that give effect to every part of a legislative act and do not render any portion thereof useless).

Therefore, even if Hodge and Smith were mistaken, their reasonable suspicion determination was still a discretionary function immune from tort liability. The Tenth Circuit's analysis in *Awad* is instructive on this point. There, Awad sued the federal

24

government for negligence, false arrest, and false imprisonment after United States Drug Enforcement Administration (DEA) agents mistakenly identified him as the perpetrator of a crime and arrested him. The government invoked discretionary function immunity under the FTCA, and the district court granted summary judgment in favor of the government.

On appeal, Awad argued the DEA agents lacked probable cause to arrest him and thus discretionary function immunity did not apply because the constitutional violation deprived the agents of discretion. The Tenth Circuit was unconvinced that the immunity question turned on the correctness of the agents' probable cause determination:

> "[P]robable probable cause is a constitutional requirement of any arrest, but Awad cites nothing that requires DEA agents to follow a 'prescribe[d] course of action' in gathering probable cause and identifying a suspect. Indeed, deciding whether probable cause has been established involves discretion and judgment; the requirement for probable cause to exist does not make the ultimate, evaluative decision non-discretionary. Even if they were mistaken, the DEA agents made a discretionary determination that probable cause to arrest Awad existed. Awad's insistence that their initial evaluation was wrong does not inform this debate; it is irrelevant to our analysis. [Citations omitted.]" *Awad*, 807 Fed. Appx. at 880-81.

*Awad* makes clear, the focus of our inquiry under K.S.A. 75-6104(e) is not on whether the officers *correctly* determined that the reasonable suspicion requirement had been met. Rather, the relevant inquiry is whether the underlying act was discretionary in nature. See *Shivers*, 1 F.4th at 931; *Linder*, 937 F.3d at 1091.

Consistent with *Awad*, we held in *Robertson* that K.S.A. 75-6104(e) applies even where a court's post-hoc analysis reveals that law enforcement made mistakes or errors in judgment while exercising discretionary authority. There, defendant summoned police officers to his house to remove a trespasser, but rather than remove the trespasser, the

25

officers ordered Robertson to leave. Soon after, the trespasser set fire to Robertson's house. Robertson sued the officers for negligence, but we held that the officers' on-the-scene decisions, made in the absence of mandatory guidelines, were entitled to discretionary function immunity, even if those decisions appeared erroneous in hindsight. *Robertson*, 231 Kan. at 362-63. We explained:

> "It would be virtually impossible for police departments to establish specific guidelines designed to anticipate every situation an officer might encounter in the course of his work. Absent such guidelines, police officers should be vested with the necessary discretionary authority to act in a manner which they deem appropriate without the threat of potentially large tort judgments against the city, if not against the officers personally.

> . . . .

> "Failure to distinguish between the time frame in which police officers are required to take action and the factual situation presented to the court by a claimant in his petition, as here, could lead to disastrous results. The court is in the position of a Monday-morning quarterback. The *facts* with which the court must deal are *established*. The critical time material to the exercise of judgment by the police officers was at the scene of the incident . . . . In our opinion the legislature did not intend to impose on police officers the obligation to ascertain the true state of the facts within such limited time frame at their peril. The police officers were not required to exercise judgment at their peril. This interpretation of the discretionary function exception in the Kansas Tort Claims Act gives it substance." 231 Kan. at 362-63.

Granted, we have held that discretionary function immunity does not apply when a clearly defined mandatory duty exists. Schreiner and the dissent suggest the Fourth Amendment and K.S.A. 22-2402 create such a mandatory duty. Contrary to their assertions, the reasonable suspicion requirement cannot be characterized as a clearly defined mandatory duty. Such a mandatory duty may arise from agency directive, caselaw, or statute. *Montgomery v. Saleh*, 311 Kan. 649, 664-65, 466 P.3d 902 (2020) (citing *Soto*, 291 Kan. at 80). And it must "leave[] little to no room for individual

26

decision making, exercise of judgment, or use of skill, and qualify[] a defendant's actions as ministerial rather than discretionary." *Thomas*, 293 Kan. at 235. In other words, a "clearly defined mandatory duty" is one that completely governs or prescribes the required course of conduct under the circumstances, leaving no room for governmental employees to exercise independent discretion or judgment.

Undoubtedly, both the Fourth Amendment and K.S.A. 22-2402 require officers to have reasonable suspicion of criminal activity before detaining a person. But neither provision sets forth a mandatory process or protocol that officers must follow in determining whether reasonable suspicion exists under the totality of the circumstances. Nor has the Legislature or police department undertaken the almost certainly impossible task of delineating every possible set of facts which may give rise to reasonable suspicion and committing them to policy. Thus, the officers' reasonable suspicion determination remains an inherently discretionary process that is not subject to or controlled by any clearly defined mandatory duty. In fact, here, both the district court and the Court of Appeals majority concluded that Hodge and Smith did have reasonable suspicion to detain Schreiner. While anecdotal, the lower courts' decisions illustrate why the reasonable suspicion requirement is not properly characterized as a *clearly defined* mandatory duty. Cf. *Shivers*, 1 F.4th at 931 (Eighth Amendment contains no specific directive as to inmate classifications or housing placements and plaintiff's allegations of an Eighth Amendment violation cannot demonstrate a breach of a mandatory duty sufficient to overcome discretionary function immunity under the FTCA).

In accord with *Shivers*, *Linder*, *Awad*, and *Robertson*, we read the plain language of K.S.A. 75-6104(e) to leave no room for a statutory construction exposing officers to tort liability if their in-the-moment judgment fails to satisfy after-the-fact constitutional scrutiny. To effectively perform their core governmental functions, K.S.A. 75-6104(e) requires law enforcement officers be afforded discretion to determine the existence of reasonable suspicion based on their experience and training, free from the deterring

27

influence of potential tort liability. The Legislature left no room for the extra-textual constitutional-claims exclusion for which Schreiner and the dissent advocate. See *Shivers*, 1 F.4th at 930. Accordingly, we hold that Hodge's and Smith's conduct falls within the scope of K.S.A. 75-6104(e), even though our post-hoc analysis reveals that the officers were mistaken in their judgment regarding the existence of reasonable suspicion.

However, this does not mean that officers may engage in any type of investigatory conduct with impunity. K.S.A. 75-6104(e) grants immunity from liability for damages arising from the officer's exercise of discretion. "The term 'discretion' imparts the exercise of judgment, wisdom and skill, as distinguished from unthinking folly, heady violence and rash injustice." *Hopkins v. State*, 237 Kan. 601, 612, 702 P.2d 311 (1985). Thus, the phrase "whether or not the discretion is abused" in K.S.A. 75-6104(e) does not insulate malicious or wanton conduct because such conduct reflects the absence of discretion, not its abuse. *Hopkins*, 237 Kan. at 612 ("If the officers acted needlessly, maliciously or wantonly, resulting in injury to the plaintiff's property, the officers acted outside the protection of the act."); see *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 264, 32 P.3d 1156 (2001); *Moran v. State*, 267 Kan. 583, 596, 985 P.2d 127 (1999); *Taylor v. Reno County*, 242 Kan. 307, 309, 747 P.2d 100 (1987); *Beck v. Kansas Adult Authority*, 241 Kan. 13, 33, 735 P.2d 222 (1987).

Liability for wanton or malicious conduct is consistent with the rule of liability at common law. "Under the common law, personal liability was imposed on officers who maliciously or wantonly injured a person or his property even though the officers were engaged in a governmental function." *Hopkins*, 237 Kan. at 611; see *Beck*, 241 Kan. at 27. We have recognized that the Legislature did not intend the KTCA to extinguish liability for a breach of these common-law duties. 237 Kan. at 611. For these reasons, the KTCA's discretionary function immunity does not insulate officers from liability for damages arising from wanton or malicious conduct.

Additionally, the KTCA does not insulate officers from potential liability arising from the breach of a *specific* duty owed to an individual. Under the common-law "public duty doctrine," a law enforcement officer's general duty to preserve the peace was considered a duty owed to the public at large, rather than to any specific person, and officers were immune from claims arising out of the performance or nonperformance of their general duties. *Conner v. Janes*, 267 Kan. 427, 429, 981 P.2d 1169 (1999); Westerbeke, 52 U. Kan. L. Rev. at 969. However, if an officer had a special relationship with the plaintiff or owed a specific duty to that individual, the officer could be liable for breaching that specific duty. 267 Kan. at 429; see also *Williams*, 310 Kan. at 788 ("To warrant an exception to the public duty doctrine, a plaintiff suing a governmental entity must establish either a special relationship or a specific duty owed to the plaintiff individually."). Because the common law did not insulate officers from liability for damages arising from negligent performance of a specific duty, the Legislature did not intend K.S.A. 75-6104(e) to apply to such conduct. See *Hopkins*, 237 Kan. at 611 ("Neither the courts nor our legislature, in passing the [KTCA], extended the mantle of immunity beyond the boundaries of protection previously recognized under the common law.").

Here, however, the summary judgment record confirms that neither of these exceptions to discretionary function immunity applies. As for the breach of a specific duty, Schreiner never alleged the existence of a special relationship with defendants. See *Williams*, 310 Kan. at 788-89 (discussing types of relationships which may give rise to government entity's specific duty). Nor did he allege any undertaking or conduct giving rise to a specific duty. See *Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1033, 667 P.2d 380 (1983) (specific duty may arise if government agent performs affirmative act that causes injury or makes specific promise or representation that creates justifiable reliance). And the summary judgment evidence does not establish any of the circumstances that customarily create a special relationship or give rise to a specific duty on the part of law enforcement. See, e.g., *Carl v. City of Overland Park, Kan.*, 65 F.3d

866, 869 (10th Cir. 1995) (mandatory police policy governing vehicle pursuits gave rise to specific duty); *Hendrix v. City of Topeka*, 231 Kan. 113, 137, 643 P.2d 129 (1982) (police officers may be liable for failure to provide promised protection to informant or for excessive use of force during arrest). Rather, the record confirms the officers were responding to a citizen's call regarding suspicious activity and investigating the same in furtherance of their general duty to preserve the peace and prevent crime. Law enforcement officers are immune from tort claims arising from the performance/nonperformance of such general duties. *Conner*, 267 Kan. at 429.

Likewise, the record reveals no evidence of wanton, let alone malicious, conduct. Wanton behavior requires:

> "'something more than ordinary negligence, and yet . . . something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result.'" *Soto*, 291 Kan. at 82 (quoting *Saunders v. Shaver*, 190 Kan. 699, 701, 378 P.2d 70 [1963]).

Neither the district court findings nor the summary judgment record suggests Hodge or Smith acted wantonly or maliciously. As the Court of Appeals observed:

> "[W]e note that Schreiner was never arrested, or handcuffed, nor was he frisked by Officer Hodge. From this record, it is clear that no voices were raised toward Schreiner and no foul language or epithets of any kind were directed toward him by any officer. While wanton conduct of a government employee is not covered by discretionary function immunity, there is simply no evidence that Officer Hodge (or Sergeant Smith) acted wantonly in this case. See *Soto*, 291 Kan. at 81-82. To the contrary, this record shows that both officers acted with professional restraint." *Schreiner*, 55 Kan. App. 2d at 60.

Schreiner does not controvert this evidence or challenge the relevant district court findings.

In conclusion, we hold that Officer Hodge and Sergeant Smith lacked reasonable suspicion to detain Schreiner. Nevertheless, the officers' detention and investigation of Schreiner, along with their reasonable suspicion determination, were discretionary functions implicating matters of policy. Therefore, the officers are entitled to discretionary function immunity under the KTCA. The plain language of K.S.A. 75-6104(e) makes clear that this immunity applies even though the officers' reasonable suspicion determination was incorrect under the facts. In the absence of any evidence establishing wanton or malicious conduct or a breach of a special duty owed to Schreiner, the district court and Court of Appeals properly concluded that the officers are entitled to judgment as a matter of law.

This holding does not deprive Schreiner of a remedy for constitutional violations. Under federal law, 42 U.S.C. § 1983 (2018) creates a cause of action for money damages based on a violation of any constitutional right under color of state law, including unconstitutional searches and seizures. *Slayton v. Willingham*, 726 F.2d 631, 635 (10th Cir. 1984). Schreiner asserts no such claim in this action. Further, the Legislature did not create the KTCA to address such constitutional violations—the KTCA only addresses liability for state tort law claims against government officials where a *private person or entity* would be liable in the same circumstances. See K.S.A. 75-6103(a) (limiting liability to damages caused by negligent or wrongful acts or omissions of government officials acting within the scope of their employment "under circumstances where the governmental entity, *if a private person*, would be liable under the laws of this state"); *Linder*, 937 F.3d at 1090 ("What's more, the theme that 'no one has discretion to violate the Constitution' has nothing to do with the Federal Tort Claims Act, which does not apply to constitutional violations. It applies to torts, as defined by state law—that is to

31

say, 'circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' The Constitution governs the conduct of public officials, not private ones. [Citation omitted.]"). And private persons are not generally liable for violations of constitutional rights, removing such claims from the reach of the KTCA. *Morse v. North Coast Opportunities, Inc*., 118 F.3d 1338, 1340 (9th Cir. 1997) (private individuals not generally liable for violations of constitutional rights unless action attributable to the government). This leaves Schreiner with the traditional state law tort theories he pled under the KTCA. Under the circumstances, K.S.A. 75-6104(e) grants the officers immunity from those claims.

The judgment of the Court of Appeals is affirmed; the judgment of the district court is affirmed.

BEIER, J., not participating.
MICHAEL E. WARD, Senior Judge, assigned.[1]

\* \* \*

ROSEN, J., dissenting:  Today, a majority of this court decides the Kansas Legislature meant to deprive individuals of the right to a civil cause of action against the state when a law enforcement officer violates K.S.A. 22-2402(1) and disregards an individual's Fourth Amendment right to be free from an unreasonable stop or seizure.

---

[1]**REPORTER'S NOTE:**  Senior Judge Ward was appointed to hear case No. 117,034 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

Because this conflicts with the statutory provisions in question and the right to a constitutional freedom that this court is tasked with protecting, I dissent.

I agree with the majority that the officers in this case did not have reasonable suspicion to detain Schreiner. Nothing in the record indicates that Schreiner's entry or exit from the "wooded area" was an act of trespass or otherwise unlawful. Although Officer Hodge testified in his deposition that he was aware of peeping Toms, break-ins, and car burglaries in the area, there is no suggestion that Schreiner was involved in any such activity. Schreiner's truck was properly tagged in the adjoining state of Missouri. It was properly parked on a residential street in Mission, Kansas. Schreiner's driver's license was valid. Schreiner committed no traffic offenses. No fruits or instrumentalities of a crime were observed in or near his truck.

All Officer Hodge knew when responding to the area was that someone had been observed walking into a wooded area in broad daylight after exiting a vehicle legally parked on a city street, and that a similar incident had occurred in the same area several weeks prior. And upon his arrival Officer Hodge learned very little that would bolster an objective belief of reasonable suspicion. Schreiner's lack of cooperation and lack of response to Hodge's questions cannot factor into the reasonable suspicion analysis. *State v. Andrade-Reyes*, 309 Kan. 1048, 1057, 442 P.3d 111 (2019).

This means that, regardless of whether the officers believed the circumstances to be suspicious, the facts that were known to them would not have made a reasonable officer with the same knowledge and training suspicious that criminal activity was afoot. See *State v. Jones*, 300 Kan. 630, 644, 333 P.3d 886 (2014). The majority and I disagree about what this means for the defendants' assertion of discretionary function immunity. I believe it conclusively defeats it. Consequently, I would reverse the Court of Appeals decision and the district court's grant of summary judgment.

Under the KTCA, subject to statutory limitations, "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 75-6103(a). This legislation makes the government liable for the injurious acts of its employees and, consequently, gives injured parties a greater chance at recovery than if they sued only the employee. It ensures this result by requiring that the government pay for the employee's legal defense and indemnify the employee against damages even when an injured party names only the employee in a lawsuit. K.S.A. 75-6108; K.S.A. 75-6109.

Both the Legislature and this court have made clear that "[u]nder the KTCA, liability is the rule and immunity from liability is the exception." *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 233, 262 P.3d 336 (2011). But two categories of exceptions exist.

The first category of exceptions shields the government from liability while leaving the employee subject to suit. The KTCA relieves the government employer from defending and indemnifying an employee if the employee was not acting in the scope of their employment, if the employee "fail[ed] to cooperate in good faith in the defense of the claim," or if the conduct was a result of "actual fraud or actual malice." K.S.A. 75-6103; K.S.A. 75-6108; K.S.A. 75-6109. If any of these are true, the injured party may file suit against the employee, but the government will not be liable for the defense or any resulting judgment.

The second category of exceptions shields both the government and the employee from liability. K.S.A. 75-6104 enumerates 24 different kinds of conduct that fall within this category of exception. The defendants here asserted immunity under the discretionary function exception in K.S.A. 75-6104, which provides:

34

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

 . . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(e).

This provision immunizes the government and its employees against liability for damages that occur when an employee is exercising a "discretionary function." Thus, the defendants' claims of immunity turn on whether their actions were discretionary in nature.

As the majority notes, the Kansas Legislature modeled the discretionary function immunity off a nearly identical provision in the Federal Tort Claims Act (FTCA). *Carpenter v. Johnson*, 231 Kan. 783, 785, 649 P.2d 400 (1982); Hagerman and Johnson, *Governmental Liability: The Kansas Tort Claims Act [or The King Can Do Wrong],* 19 Wash. L. J. 260, 272 (1980). Federal courts have been interpreting this provision since 1953. *Dalehite v. United States*, 346 U.S. 15, 73 S. Ct. 956, 97 L. Ed. 1427 (1953) (first interpreting discretionary function provision in FTCA). In one of its more recent cases, the United States Supreme Court has explained "the basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz v. United States*, 486 U.S. 531, 536-37, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988). The Court has also outlined a two-step model for evaluating discretionary function questions: (1) did the government employee or agency have discretion to make any choice at all? If the employee had no discretion, the exception did not apply; and (2) if the employee had discretion or choice, did Congress intend to immunize that type of discretion from liability? 486 U.S. at 536-37.

35

This court has considered this federal caselaw in interpreting Kansas' own discretionary function provision. It first did so 1982 in *Robertson v. City of Topeka*, 231 Kan. 358, 362, 644 P.2d 458 (1982). There, the plaintiff alleged officers were negligent in responding to his call to have a third party removed from his property. The officers, unsure of who the property belonged to, ordered the plaintiff off the property. The third party remained and burned down the house. The court held the officers had been performing a discretionary function because, based on the facts known to the officers, there was no clear-cut remedy and the officers lacked clear guidelines to follow under the circumstances. *Robertson*, 231 Kan. at 362.

A few months later, this court offered some nuance to the discretionary function analysis in *Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400 (1982). It considered whether the government and its employees were immune from liability when the plaintiff alleged that employees were negligent in failing to place a warning sign at a curve in the road in contravention to guidelines in an agency manual. The court announced that "[t]he test is whether the judgments of the government employee are of the nature and quality which the legislature intended to put beyond judicial review." 231 Kan. at 788. It observed that the employees were statutorily required to follow the guidelines in the manual and reasoned that, whether the decision to leave the curve without a sign was discretionary depended on whether the manual's guidelines required the sign. Because this was a factual decision that could not be determined as a matter of law based on the summary judgment record, the defendants were not entitled to immunity. 231 Kan. at 790.

This court cited *Carpenter* a few years later in *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), in holding that the State was not immune when prison staff failed to confine dangerous inmates and to warn when those inmates escaped. This court held that "the State, as the custodian of dangerous persons" had a "duty to confine and [a] duty to

36

warn." 234 Kan. at 570. These were "non-discretionary" requirements "imposed by law" and, consequently, employees' alleged failure to follow the requirements was not protected by discretionary function immunity. 234 Kan. at 570. *Carpenter* and *Cansler* stand for the notion that government actors are not engaged in a discretionary function that is outside of the court's review if they have allegedly violated a mandatory rule.

We expanded upon the mandatory guideline rule in *Jackson v. City of Kansas City*, 235 Kan. 278, 290, 680 P.2d 877 (1984), *overruled on other grounds by Simmons v. Porter*, 298 Kan. 299, 312 P.3d 345 (2013). There, we concluded firefighters were not performing a discretionary function when their fire engines collided because they had violated the department's policy of driving under 35 miles per hour. With *Jackson*, we embraced the notion that the mandatory guidelines that make an employee's conduct non-discretionary can come from statutes, caselaw, or department policy. We explicitly confirmed this in *Soto v. City of Bonner Springs*, 291 Kan. 73, 80, 238 P.3d 278 (2010) ("A mandatory guideline can arise from agency directives, case law, or statutes.").

Shortly after *Jackson*, this court offered a more robust definition of discretionary function. It observed that "'[d]iscretion' has been defined as the power and the privilege to act unhampered by legal rule" and "as the capacity to distinguish between what is right and wrong, lawful and unlawful, wise or foolish, sufficiently to render one amenable and responsible for his acts." *Hopkins v. State*, 237 Kan. 601, 610, 702 P.2d 311 (1985). It reasoned that "[d]iscretion implies the exercise of discriminating judgment within the bounds of reason." 237 Kan. at 610 (citing *Sandford v. Smith*, 11 Cal. App. 3d 991, 1000, 90 Cal. Rptr. 256 [1970]).

We summarized much of this caselaw in *Thomas v. Board of Shawnee County Comm'rs,* 293 Kan. 208, 262 P.3d 336 (2011). There, we observed that "'[t]he mere application of any judgment is not the hallmark of the exception.'" 293 Kan. at 234 (quoting *Soto,* 291 Kan. at 79). Instead, we explained, "'the more a judgment involves

the making of policy, the more it is of a "nature and quality" to be recognized as inappropriate for judicial review.'" 293 Kan. at 234 (quoting *Kansas State Bank & Tr. Co.,* 249 Kan. 348, 365, 819 P.2d 587 [1991]). And we noted three principles that guide the application of the discretionary function exception:

"(1) '[T]he discretionary function primarily involves policy-oriented decisions and decisions of such a nature that the legislature intended them to be beyond judicial review,' (2) 'the immunity does not depend upon the status of the individual exercising discretion and thus may apply to discretionary decisions made at the operational level as well as at the planning level,' and (3) 'the discretionary function does not encompass conduct that is deemed "ministerial," *i.e.,* conduct that involves no discretion.'" *Thomas*, 293 Kan. at 235 (quoting Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years*, 52 U. Kan. L. Rev. 939, 960 [2004]).

More recently, we emphasized that "[g]enerally, the discretionary function exception is inapplicable when there is a '"clearly defined mandatory duty or guideline,"'" which can arise from statutes, caselaw, or agency directives." *Hill*, 310 Kan. at 510 (quoting *Soto*, 291 Kan. at 80); see also *State ex rel. Franklin v. City of Topeka*, 266 Kan. 385, 391, 969 P.2d 852 (1998) (no immunity against employment discrimination claim because State was subject to "legislatively created duty to refrain from discriminatory employment practices" under K.S.A. 44-1009).

In this case, Schreiner has alleged that the officers violated a mandatory statutory rule and a constitutional provision. Because the summary judgment record conclusively shows this to be true, the defendants were not entitled to discretionary function immunity.

An officer's authority to detain a suspect during an investigation is expressly limited by the United States Constitution and a Kansas statute. The Fourth Amendment prohibits officers from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. And K.S.A. 22-2402(1) provides that "a law enforcement officer may stop

38

any person in a public place whom such officer *reasonably suspects is committing, has committed or is about to commit a crime* and may demand of the name, address of such suspect and an explanation of such suspect's actions." (Emphasis added.) Following our own caselaw regarding the non-discretionary nature of a state actor's alleged failure to follow mandatory guidelines, these rules take an unreasonable stop outside the realm of discretionary functions. Many federal courts have similarly held there is no discretionary function immunity under the FTCA's discretionary function immunity clause for alleged violations of constitutional rights. *Loumiet v. United States*, 828 F.3d 935, 943-44 (D.C. Cir. 2016) ("At least seven circuits, including the First, Second, Third, Fourth, Fifth, Eighth, and Ninth, have either held or stated in dictum that the discretionary-function exception does not shield government officials from FTCA liability when they exceed the scope of their constitutional authority" and "[t]o this court's knowledge, only the Seventh Circuit has held otherwise."); see, e.g., *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (no discretionary function immunity when plaintiff alleged unconstitutional policies because "governmental conduct cannot be discretionary if it violates a legal mandate"); *Muhammad v. United States*, 884 F. Supp. 2d 306, 313 (E.D. Pa. 2012) ("it is well established that the discretionary function exception does not apply to constitutional violations").

This conclusion comports with our general understanding that a discretionary function is one that is largely policy-based. The central question the officer faces—whether reasonable suspicion exists—is neither policy-centered nor one I think the Legislature intended to put beyond a court's review. This is a constitutional query, and, as such, has been firmly within the judiciary's realm since the United States Supreme Court held that it is the final arbiter of the Constitution. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803). Courts have been explicitly examining whether an officer had reasonable suspicion of criminal activity since the standard appeared in 1968. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (announcing for first

39

time that officers can briefly stop and investigate person based on reasonable suspicion of criminal activity without offending the Fourth Amendment).

It is true that officers must, often in a split second, decide whether reasonable suspicion exists, and their employers give them the authority to make this decision and act on it. In this sense, an officer who chooses to pursue an investigatory detention is clearly exercising judgment. But, as the Sixth Circuit has concluded, this "exercise of 'discretion' by the officer in the sense of choosing among alternative courses of action does not automatically trigger official immunity." *Downs v. United States*, 522 F.2d 990, 998 (6th Cir. 1975) (citing *Carter v. Carlson*, 447 F.2d 358 [D.C. Cir. 1971], *rev'd on other grounds* 409 U.S. 418, 93 S. Ct. 602, 34 L. Ed. 2d 613 [1972]). This is because officers who suspect criminal activity have no legal authority to stop and investigate a person unless that suspicion is *objectively* reasonable. Courts maintain this rule "because protection of personal liberties is thought to outweigh the danger of less effective law enforcement out of fear of personal tort liability." *Downs*, 522 F.2d at 998.

The distinction between an officer's decision to investigate and an officer's decision to detain someone while investigating cannot be understated. The judgment of whether to investigate the complaint of an identified citizen, or an anonymous tip, or even an offense observed by the officer, is generally within an officer's discretion. It is not guided or compelled by statute or caselaw or policy. Law enforcement officer's use that discretion regularly for instance in deciding whether to initiate a traffic stop. It can be a matter of the time available, the distance to be traveled, the perceived credibility of the reporting party, or the need to investigate more serious matters. In that sense then, the decision of whether to investigate is a discretionary act as that term is used in the KTCA.

This aspect of policing often involves the sometimes-competing policy concerns of suppressing crime and protecting the public, because pursuing a suspect can endanger the lives of bystanders. See generally *Montgomery v. Saleh*, 311 Kan. 649, 466 P.3d 902

(2020) (plaintiffs alleged officer's pursuit of suspect caused third-party injuries). And officers are not generally compelled by a mandatory statute, regulation, or specific duty to investigate crime. While owing a duty to the public at large to preserve the peace, absent a special relationship, officers do not always have a duty to take affirmative action. *Robertson*, 231 Kan. at 363.

But Schreiner has not alleged an issue with the officers' decision to investigate or not investigate a suspected crime. He challenges the officers' decision to detain him *without* reasonable suspicion during their investigation. This is an obvious violation of a mandatory statutory directive. K.S.A. 22-2402(1) is clear. The detention is conditioned on the presence of reasonable suspicion, which we unanimously agree was not present in this case. As such, it was not a "discretionary function" as envisioned by the Kansas Legislature.

Quoting *Soto*, 91 Kan. at 73, the majority posits that we regularly consider "investigatory methods and procedures employed by governmental employees to be matters requiring the exercise of judgment and discretion." *Schreiner v. Hodge*, 315 Kan. ___, slip op. at 20 (2022). While that may be true, we face a more specific situation. As I have explained, Schreiner alleged—and established—a violation of a specific statutory and constitutional directive. He has not offered a broad claim of negligence.

The majority relies heavily on *Soto*, but the facts and the analysis fail to support its position. In *Soto*, officers lawfully stopped the plaintiff for a traffic violation and were informed by dispatch that there was a warrant for the plaintiff's arrest. After the plaintiff had been arrested, jailed, and transferred to the county that issued the warrant, officials learned the plaintiff was not the subject of the warrant. The Court of Appeals concluded county officials were performing a discretionary function when they confirmed the plaintiff's identifiers with the issuing county and declined to continue investigating the plaintiff's claims of mistaken identity. 38 Kan. App. 2d at 386. The panel quoted an out-

41

of-state case for the notion that officers are "'engaged in a discretionary function in determining how to investigate, and to what extent to investigate before seeking a warrant.'" *Soto*, 32 Kan. App. 2d at 385 (quoting *Davis v. Klevenhagen*, 971 S.W.2d 111 [Tex. App. 1998]). This court affirmed, but it further limited the legal contours of the discretionary function immunity that can be gleaned from *Soto* by stating "the decision whether to do anything about a claim of mistaken identity may or may not be discretionary . . . , but the precise steps to be taken by detention personnel to consider such a claim, e.g., to verify personally identifying information, is discretionary.*" Soto*, 291 Kan. at 85.

Contrary to the majority's position, *Soto* does not stand for the notion that law enforcement officers are always performing a discretionary function when they are making decisions related to investigation. Rather, it offers the very specific holding that policy decisions about how to investigate claims of mistaken identity can generally be described as discretionary and, more generally, that the KTCA does not blanket officers with unfettered immunity whenever they are making investigatory decisions.

But the majority uses its reading of *Soto*—that investigatory decisions are always discretionary—to support its conclusion that investigatory *detentions*, regardless of whether they are prohibited by statute or the Constitution, are discretionary acts for which neither the employee nor government are liable. It reasons that, like investigatory decisions, "an officer's determination whether reasonable suspicion exists is an inherently discretionary process" because the officer must make a decision based on the facts and the officer's experiences. *Schreiner*, 315 Kan. at ___, slip op. at 20. The majority opines that this "necessarily entails the exercise of judgment and discretion." 315 Kan. at ___, slip op. at 20.

By this standard, every decision would fall within the realm of a discretionary function. This court has acknowledged that "'judgment is exercised in almost every

human endeavor, so that factor alone cannot be determinative of immunity.'" *Carpenter*, 231 Kan. at 789 (quoting *Robertson*, 231 Kan. at 361). Moreover, as I have emphasized, an officer does *not* have discretion to detain an individual when the facts known to that officer would not make a reasonable officer suspicious of criminal activity.

The majority also concludes that deciding whether reasonable suspicion of criminal activity is present "implicates matters of policy sufficient" to make an officer's detention of someone a discretionary act. The majority rests this characterization on a number of flawed assertions.

First, the majority paints this as a policy decision because officers who are investigating crimes are acting within the scope of their employment to perform a traditional government function. But the KTCA applies only when an employee is acting within the scope of their employment. K.S.A. 75-6103(a). The majority cannot use the very circumstance that subjects the government to liability to immunize the government from liability. And, even if the performance of a "traditional government function" is generally discretionary, the complained of conduct in this case—detaining an individual without reasonable suspicion—is not a traditional government function.

Next, the majority asserts that an officer's decision to detain a person is one of policy that the Legislature intended to shield from judicial review because an officer's authority to detain people was established as a matter of policy through K.S.A. 22-2402(1) by the Kansas Legislature. The majority points out that the statute provides that an officer "*may*" stop a person when they have reasonable suspicion, thus making their decision to do so discretionary. I agree that officers generally have discretion to detain an individual or not detain an individual *when reasonable suspicion exists*. Consequently, as I explain above, allegations that officers were negligent when they did not pursue a suspect will usually be defeated by a claim of discretionary immunity. But, again, that is not what we face here. Schreiner has alleged, and we have agreed, that the officers

43

detained him *without* reasonable suspicion of criminal activity. The Legislature has not authorized officers to do this and our Constitution explicitly forbids it.

The majority concludes by opining that an officer deciding how to investigate a report of criminal activity must make many policy-related decisions. I agree that in determining whether and how to pursue an investigation an officer must decide what will be most effective and serve public safety. But in doing so, an officer must not traverse the bounds of what is statutorily or constitutionally appropriate. Clearly, there are means of investigating reports of criminal activity without detaining a person when reasonable suspicion does not exist. In making decisions about how to do so, discretionary function immunity will generally apply. But when a plaintiff has alleged that an officer overstepped statutory and constitutional limits, and the summary judgment record cannot conclusively establish this to be untrue, discretionary function immunity does not apply.

Finally, the majority declares that its ruling does not deprive Schreiner of a remedy because he can bring a § 1983 action against the officers as individuals. This is less persuasive than the majority implies. Unless the complained-of actions constituted execution of local governmental "custom," the plaintiff has a suit against only the individual employee, not the local government employer who is responsible for the employee's training and supervision and, practically speaking, has better ability to absorb the financial impact of a judgment against its favor. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In addition, the § 1983 plaintiff faces the towering barrier of qualified immunity. Judge Reinhardt of the Ninth Circuit has explained, "[T]he Court has through qualified immunity created such powerful shields for law enforcement that people whose rights are violated, even in egregious ways, often lack any means of enforcing those rights." Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences*, 113 Mich. L. Rev. 1219, 1245 (2015). As a

consequence, the existence of a possible § 1983 action does little to relieve any distress over eliminating the KTCA action.

In the same line of analysis, the majority also posits that the KTCA is not even applicable to this constitutional violation because the legislation subjects government entities to suit only when a private individual would be liable, and the Constitution does not regulate private conduct. But Schreiner has alleged assault, battery, false imprisonment, and false arrest. Private individuals are certainly liable for these torts even if their actions do not also amount to constitutional violation.

I can support neither the result nor the supporting analysis from the majority. Four members of this court have overlooked years of caselaw and statutory and constitutional provisions to totally immunize the government and its employees from an unconstitutional detention. Although the Kansas Legislature meant to chisel a path of meaningful relief for those who would be harmed by the torts of government employees, this court dismantles that path for those attempting to recover for a Fourth Amendment violation. Put another way, I cannot agree with an interpretation of the KTCA that immunizes the violation of one's Fourth Amendment rights.

I would conclude that the district court erred when it granted summary judgment based on discretionary function immunity, and the Court of Appeals majority erred when it affirmed that ruling.

MICHAEL E. WARD, Senior Judge, joins the foregoing dissenting opinion.

* * *

BILES, J., dissenting: Contrary to the majority's holding, both the Fourth Amendment to the United States Constitution and Kansas law prevent law enforcement

45

from simply detaining someone in a public place without their consent while investigating whether that person just might happen to be involved in criminal activity. Without more, this is not an optional investigative tool. The Legislature has declared this tactic out of bounds. See K.S.A. 22-2402(1). Our law requires an investigating officer to have an articulable and reasonable suspicion—based in fact—that the person being detained is committing, has committed, or is about to commit a crime. See *State v. Sanders*, 310 Kan. 279, Syl. ¶ 5, 445 P.3d 1144 (2019) ("The suspicion must have a particularized and objective basis and be something more than a suspicion or hunch."). Today, for purposes of civil liability, the majority scraps this objective standard and sets the new bar somewhere below even a gut feeling. For that reason, I dissent.

The majority's premise is that an officer who detains someone is immune from civil liability under the Kansas Tort Claims Act because of the discretion the officer exercises in deciding *whether* to investigate crime and *how to* do to it, even if the "how to" part includes breaking the law. This makes little sense. See *Hopkins v. State*, 237 Kan. 601, 610, 702 P.2d 311 (1985) (noting "'discretion'" as used in K.S.A. 75-6104[e] can be understood as "the privilege to act unhampered by legal rule"). If the Legislature wanted law enforcement to be immune from civil liability even when violating the law, it could have said so by broadening the statutory definition of "discretion" in K.S.A. 75-6104(e) from its established legal meaning. But the Legislature has not done that, so the majority engages in judicial policy making to get there.

By enacting K.S.A. 22-2402(1), the Legislature fixed an officer's duty when deciding whether to detain someone without making an arrest. That statute provides:

> "Without making an arrest, a law enforcement officer *may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime* and may demand of the name, address of such suspect and an explanation of such suspect's actions." (Emphasis added.)

46

The key here is the Legislature's use of the term "reasonably suspects." And this requirement to have reasonable suspicion before detaining someone without arresting them resides not only in K.S.A. 22-2402(1) but also the Fourth Amendment to the United States Constitution. Yet to get to its desired policy result, the majority twists this case into a rhetorical pretzel by muddling two key distinct questions: whether an officer can investigate a person who happens to be in a public place; and whether that officer can forcibly stop the person while doing that investigation. And by clouding over things in this way, the majority misses the real question: whether Kansas law enforcement officers have a privilege to simply detain anyone in public unhampered by legal rule. And as to that, our statute, the Fourth Amendment, and the caselaw collectively set a clearly defined, mandatory standard for an officer's decision to detain. See *State v. Cash*, 313 Kan. 121, 130, 483 P.3d 1047 (2021) ("The reasonable suspicion analysis requires use of an objective standard based on the totality of the circumstances, not a subjective standard based on the detaining officer's personal belief.").

An even stranger reality here is that every member of this court agrees these officers did not meet our well-established, reasonable suspicion standard when forcibly detaining Schreiner during this encounter. *Schreiner v. Hodge*, 315 Kan. ___, slip op. at 4 (2022). The majority correctly notes Officer Hodge "never articulated anything about Schreiner or Schreiner's vehicle *that led him to believe Schreiner was committing any crimes*." (Emphasis added.) 315 Kan. at ___, slip op. at 10. And as far as I'm concerned, that's the ballgame. The officer admits nothing about this encounter led him to believe Schreiner was committing *any* crime. Making this point even clearer, the majority continues:

"Hodge stated that nothing about Schreiner's vehicle made him believe it had been involved in a crime. Hodge also said he had not witnessed Schreiner commit any crimes, and that Schreiner did not fit the description of any suspects from any known crimes. And

47

while Hodge found Schreiner's behavior to be 'evasive' and 'erratic,' and perceived Schreiner as 'nervous,' *he never connected this to criminal activity*." (Emphasis added.) 315 Kan. at ___, slip op. at 11.

So if the officer had nothing articulable connecting Schreiner to criminal activity, can we not also agree the best he had was maybe a hunch? And if that is so, surely we can agree that based on the officer's training and experience he would know, or reasonably should have known, he had no business preventing Schreiner from moving on without something more to go on. Yet, the officer stopped him anyway, assisted by other officers who the majority holds also lacked any objective, articulable basis to reasonably believe Schreiner committed, was committing, or was about to commit a crime. 315 Kan. at ___, slip op. at 13. How is this anything other than an unlawful detention?

Our full court also understands the statutory exception to civil liability does not apply when a clearly defined mandatory duty or guideline exists, which it does in this case because that mandatory duty exists under statute, caselaw, and the Constitution. 315 Kan. at ___, slip op. at 26. So if the standard is so clear that every member of this court sees it, and we also know these officers were trained and experienced in appropriate police procedures, how can it be said there is no recognizable, clearly defined mandatory duty when deciding entitlement to discretionary function immunity under K.S.A. 75-6104(e)? It is not enough to simply say the investigating officer might in good faith get it wrong sometimes because an officer who acts in good faith is typically shielded from individual liability already through the KTCA's indemnity provisions. See K.S.A. 75-6109. And one would think a governmental entity's potential civil liability would operate as a beneficial deterrent for public agencies to ensure officers receive appropriate training on something as fundamental as detaining citizens on public streets.

Even so, the majority holds "an officer's decision whether and how to investigate a crime, along with his or her reasonable suspicion determination, require the type of

48

policy-based judgments the Legislature intended to insulate from tort liability." 315 Kan. at ___, slip op. at 22. I disagree. To the contrary, it is an assessment whether the facts confronting an officer are objectively sufficient to raise suspicion of criminal conduct. And this assessment is one that courts routinely review, including as we have done in this very case. The point is simply this: the Legislature has already decided law enforcement does not have discretionary power to detain an individual in a public place based on some subjective notion of suspicion. And this is not open to debate. Our law is as plain as it can be—officers who have a hunch about possible criminal activity have no legal authority or discretion to just stop someone out in public. Their suspicion must be *objectively* reasonable.

The simple conclusion should be that the "exercise of 'discretion' by the officer in the sense of choosing among alternative courses of action does not automatically trigger official immunity." *Downs v. United States*, 522 F.2d 990, 998 (6th Cir. 1975). And given the certainty attached to the officer's duty in these circumstances, the majority's concerns about courts second-guessing an officer's in-the-field decision making are blind to reality. Courts have been doing this since the reasonable suspicion standard appeared in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). And the consequences when the officer is wrong are often far more serious than potential civil liability exposure because criminal convictions get reversed and crucial evidence gets suppressed based on this judicial review. See, e.g., *State v. Jimenez*, 308 Kan. 315, 420 P.3d 464 (2018) (upholding suppression of drug-trafficking evidence discovered during a traffic stop that was improperly prolonged without reasonable suspicion).

Indeed, even in the civil liability context, many federal courts have held there is no liability shield under the Federal Tort Claims Act's discretionary function immunity clause for alleged violations of constitutional rights. *Loumiet v. United States*, 828 F.3d 935, 943-44 (D.C. Cir. 2016) ("At least seven circuits, including the First, Second, Third, Fourth, Fifth, Eighth, and Ninth, have either held or stated in dictum that the

discretionary-function exception does not shield government officials from FTCA liability when they exceed the scope of their constitutional authority," and "[t]o this court's knowledge, only the Seventh Circuit has held otherwise."); e.g., *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (no discretionary function immunity when plaintiff alleged unconstitutional policies because "governmental conduct cannot be discretionary if it violates a legal mandate"); *Muhammad v. United States*, 884 F. Supp. 2d 306, 313 (E.D. Pa. 2012) ("[I]t is well established that the discretionary function exception does not apply to constitutional violations.").

We all agree Officer Hodge did not have a particularized and objective basis to suspect Schreiner was committing, had committed, or was about to commit a specific crime. Hodge even told Schreiner he was free to leave, but then stopped him by grabbing his arm when Schreiner did what Hodge said he could do. These officers were not performing a discretionary function as envisioned by the Legislature because their conduct violated a clearly defined, mandatory duty requiring reasonable suspicion to detain a person. And without any recognizable standard for accountability, those inclined to do so will do as they please. I would reverse the Court of Appeals decision and the district court's grant of summary judgment.